EVALINE RICHARDSON, JOHN W. KING, OLIVE J. FOSTER, ORVILLE J. KING, LULU MURPHEY, Appellants, v. LILLIA C. KING, Appellee.

Divorce: APPEARANCE: WAIVER OF DEFECTS IN NOTICE AND PETITION. Where the defendant appeared and filed answer in a divorce action, in which the parties were correctly named, a defect in the names of the parties in the original notice and petition was waived; and the final decree in which they were correctly named will be held to have been entered after the errors were corrected by amendment or otherwise, in support of the jurisdiction of the court. Besides the error in names in this instance was not such as to avoid a decree properly entered.

Same: PLEADINGS: WAIVER OF DEFECTS. The parties to a divorce suit can not consent to a decree, or by agreement confer jurisdiction; but where the jurisdictional facts existed and the defendant appeared and joined issue on certain alleged grounds of divorce, without challenging the sufficiency of the petition in any respect, he will be held to have waived defects in the petition, the same as in other cases, in a collateral attack on the decree.

Same: JURISDICTION: PRESUMPTION. In support of a judgment of divorce against a collateral attack, the appellate court will assume that the trial court found it had jurisdiction and that all matters necessary to that jurisdiction were established.

Same: CANCELLATION OF DECREE: COLLATERAL ATTACK. Courts are slow to set aside a decree of divorce after a second marriage has taken place; and where third parties seek by collateral attack to avoid a decree which is fair on its face, for the purpose of rendering the second marriage illegal and thus depriving the surviving spouse of a share in the property of decedent, they must show that the former decree of divorce was absolutely void for want of jurisdiction.

Same: PARTIES. A resident defendant in a divorce action is a necessary party to a suit to set the decree of divorce aside, whether the action is a direct or collateral attack upon the decree.

Marriage: ACTION TO ANNUL. Where an apparently valid decree was granted the wife and she married another, a suit to annul the second marriage, on the ground that the decree of divorce was granted without jurisdiction, should be brought during the life of the second husband.

*Appeal from Fayette District Court.*—HON. L. E. FEL-
LOWS, Judge.

FRIDAY, APRIL 5, 1912.

SUIT in equity to set aside a decree of divorce secured
by defendant against one Wyman Luther, and to determine
the interests of the plaintiffs in some real estate in
Buchanan County, Iowa. The trial court dismissed the
petition, and plaintiffs appeal.—*Affirmed.*

*Loren Risk* and *Barr & Kenyon,* for appellants.

*J. R. Bane,* for appellee.

DEEMER, J.—Plaintiffs are the heirs at law of Chas.
W. King, deceased, who died seised of the real estate in
dispute. Defendant was married to Chas. W. King, and
if she be his widow, she is entitled to share in his real
estate. Plaintiffs claim that she is not his widow for the
reason that, before marrying King, she had been married
to Wyman Luther, from whom she was never legally
divorced. It is admitted, however, that defendant brought
an action for divorce against Luther, and that a decree
was rendered granting the prayer of the petition; but it
is contended that the decree is not binding because of de-
fects in the proceedings, and that the court rendering it
was without jurisdiction. The defects in the divorce pro-
ceedings, as shown by the record, are these:

I. The original notice of the divorce proceedings
indicated that action was brought by Lillia Lother v. Wil-
liam Lother; and the petition filed named the
plaintiff as Lillia Lather and the defendant
as Wyman Lather. The testimony taken by
a commissioner appointed by the court,
defendant not appearing, was in an action entitled Lil-

1. DIVORCE:
appearance:
waiver of
defects in
notice and
petition.

lia Luther v. Wyman Luther, and the final decree was entered in a case entitled in the same manner. Luther entered his appearance to the action, and in an answer entitled as in the case of Lillia Luther v. Wyman Luther, practically denied each and every allegation of the petition. Upon the testimony reported by the commissioner decree was duly entered of record on November 26, 1906, in a case properly entitled. The original notice was personally served upon Wyman Luther in the city of Oelwein in Fayette county, Iowa. The decree recites that defendant appeared by attorney at the hearing, and that, after hearing the evidence and the arguments of counsel, the court found: "That the parties were married near Arlington, Fayette county, Iowa, March 26, 1879; that since said marriage, about the year 1902, the defendant Wyman Luther wilfully deserted plaintiff, Lillia Luther, and has ever since absented himself without a reasonable cause for the period of over two years, and that plaintiff is entitled to a divorce from him." The decree itself was in the following language: "It is therefore considered by the court and ordered and adjudged and decreed that the plaintiff be divorced from the defendant, and that the bonds of matrimony existing between the plaintiff, Lillia Luther, and the defendant, Wyman Luther, be dissolved, and that the plaintiff have judgment against the defendant for costs of this action, hereby taxed at $10.40, which costs are paid by the defendant." After entry of this decree, and on or about December 22, 1907, Lillia Luther was married to Chas. W. King. King died intestate March 27, 1910. The contention made by plaintiffs here is that, because of the mistake in the names of the parties as heretofore noted, the decree is invalid and the marriage to King illegal and void. The mistake, if any, in the notice, was cured by Luther's appearance, and, although the petition was entitled Lillia Lather v. Wyman Lather, the defendant therein appeared in his true name and filed an answer in

the case which was properly entitled. The testimony was taken in a case properly entitled, and the final decree correctly named the parties. As the final decree which properly named the parties recites that defendant appeared by attorney, the defects in the prior papers were waived and in order to support the jurisdiction it will be presumed, if that be necessary, that the errors in name were corrected by amendment or otherwise before final decree was entered.

Aside from this, we do not think the error in name sufficient to justify a court in ignoring a decree properly entered. See, as supporting this view, *Simons v. Marshall,* 3 G. Greene, 502; *Griffith v. Harvester Co.,* 92 Iowa, 634; *Loser v. Bank,* 149 Iowa, 672.

II. The only other point relied upon is the insufficiency of the petition upon which the divorce was granted. The sections of the Code material to this inquiry read as follows:

Except where the defendant is a resident of this state, served by personal service, the petition for divorce, in addition to the facts on account of which the plaintiff claims the relief sought, must state that the plaintiff has been for the last year a resident of the state, specifying the township and county in which he or she has resided, and the length of such residence therein after deducting all absences from the state; that it has been in good faith and not for the purpose of obtaining a divorce only; and in all cases it must be alleged that the application is made in good faith and for the purpose set forth in the petition. (Code, section 3172).

The petition must be verified by the plaintiff and its allegations established by competent evidence. If the averments as to residence are not fully proved, the hearing shall proceed no further, and the action be dismissed by the court; and no divorce shall be granted on the testimony of the plaintiff alone. All such actions shall be heard in open court upon the oral testimony of witnesses, or depositions taken as in other equitable actions or by a commissioner appointed by the court. (Code, section 3173).

The petition filed in the divorce case, so far as material, reads as follows:

Par. 1. Plaintiff alleges that on the 26th day of March, 1879, the plaintiff and defendant were married near Arlington, Fayette county, Iowa, and have ever since been and now are husband and wife. Par. 2. That the parties have lived in Fayette county, Iowa, most of their lives since said marriage except when defendant was absent in Dakota. That both parties are now in said Fayette county, Iowa. . . . Par. 4. That the defendant, disregarding his marriage vows, did about the year 1902 wilfully desert the plaintiff and absent himself without a reasonable cause for the space of over two years and has failed and refused to support her. Par. 5. Plaintiff further alleges that, since and after said marriage, the defendant became addicted to habitual drunkenness and neglected his family. Par. 6. That the plaintiff has no property of her own and has to rely upon her labor for her support.

It will be noticed that the residence of each of the parties is imperfectly stated, and there is no allegation that "the application was made in good faith and for the purpose set forth in the petition." Defendant was personally served with notice of the action in Fayette county, and he appeared and filed answer; his answer admitting all the allegations of the petition except those contained in paragraphs 4, 5, and 6. The testimony adduced before the commissioner, which was reported to the court, showed the following:

2. SAME: pleadings: waiver of defects.

Mrs. Luther testified:

My name is Lillia Luther, aged 42; reside in Putnam township, Fayette county, Iowa. I was married to the defendant March 26, 1879, near Arlington, Fayette county, Iowa. We have lived in Fayette county most of the time ever since with some few exceptions. . . . He (defendant) never owned a farm, never accumulated any property, and we drifted from place to place until about the spring of 1904, when we were living about 1½ miles from Oelwein, Iowa. . . . I am now working

for a farmer and family, caring for their house, on a farm in Putnam township, Fayette county, Iowa, and have been there since March, 1906.

Another witness testified: "I have known plaintiff quite intimately since March, 1904, and know of my own personal knowledge that she has kept house and worked by the week for other parties for her support and maintenance."

And still another, a daughter of the parties:

About the time the defendant left my mother for good, he came home on one occasion intoxicated and said he wouldn't sleep in the house because mama was there. At that time my husband and I were working for the owner of this farm on which we now reside. That prior to this time my father and mother had been working on this farm for the owner, but on account of the defendant's indolence and negligence the owner of the farm wouldn't let him have it any longer. During the winter of 1903 and 1904, my mother was with me and my father, the defendant, also. I heard the defendant just prior to the time he left frequently swear at my mother. . . . The defendant did leave my mother early in March, 1904, without any cause on her part, and has absented himself ever since. That since that time my mother has been obliged to work out by the week and support and provide for herself. That I know she has done this of my own personal knowledge, and I know that my father has refused to live with her and has not lived or cohabited with her since that, early in March, 1904. My mother has always had the care of the family upon her. She has been kind and attentive to the children. She has been economical and industrious and never gave my father any cause for leaving. She is now working for a farmer and his family. I think it is in Putnam township, Fayette county, Iowa.

Upon the trial of the instant case in January, 1911, plaintiff in the divorce case, defendant here, testified:

Q. State when and where you were married to Wyman Luther? A. Well, near Arlington, Iowa. Q. What county?

A. Fayette county, the 26th day of March. Q. When? A. 1879. Q. Where did you reside immediately after your marriage in 1879, you and your husband at that time? A. In Fayette county, near Aurora. There wasn't any Aurora there then. There wasn't any town there then. Q. State when it was you worked for John Spinley? A. Well, we worked for him the spring we were married. Q. Where did you reside at that time, township, county, and state? A. Fayette county. Q. You may state in what counties and states you and your husband resided in since your marriage and up to the time the decree of divorce was obtained? A. Never out of the two counties myself, and never while we were married was he out of the two counties I know of. We lived mostly in Fayette county. Q. What do you mean by the 'two counties?' A. Buchanan just adjoining, just south of Fayette county. Q. About how many years after your marriage did you reside in Buchanan county? A. Well, let me see; well, the following season, I believe in the following season, in May, the same spring, we went onto a farm just over the line in Buchanan county. Q. About how long did you reside, you and your husband, at that time in Buchanan county? A. Well, we seldom was out of the county. About a year and a half or two years, somewhere inside of two years, we lived I guess. Q. About how many years since you first resided in Buchanan county? A. Well, I don't know as I could tell exactly how long it has been; it has been quite a while. Q. About ten years? A. Oh, it has been all of that. Q. Been twelve years? A. Yes, it has been all of twelve years. Q. Wasn't it along some time about 1887 or 1888 that you resided in Buchanan county, Iowa? A. Well, let me see. I had some of those dates, but I can't call them to memory. Q. After removing from Buchanan county, to what county did you remove to, and where did you reside? A. Why, back to Fayette county. Q. Fayette county, Iowa? A. Fayette county, Iowa. Q. Have you and your husband since your marriage and up to the time the decree of divorce was obtained in November, 1906, ever resided outside of either Buchanan or Fayette counties, state of Iowa? A. No, sir. Q. State whether or not about the year 1902 you and your husband worked and resided on what is called the Mason and Brown farm near Oelwein, Fayette County, Iowa?

A. Yes, sir; we resided there. Q. State whether or not from that time, and up until the time the decree of divorce was obtained, you and your husband resided anywhere else than in Fayette county, Iowa? A. No, sir. Q. At the time you filed the petition for divorce in August, 1906, in what township, county, and state were you living in? A. Living in Fayette county, Putnam township, state of Iowa. Q. You may state in what county the defendant, Wyman Luther, resided at that time? A. He was living in Fayette county. Q. Go on, what state? A. State of Iowa. Q. Now, you may state whether or not the residence in Fayette county, state of Iowa, at the time you filed the petition for divorce, on your part was in good faith and not for the purpose of obtaining divorce only. A. Yes, sir. Q. You may state whether or not the application for the divorce of 1906 was made in good faith and for the purpose set forth in the petition in the case. A. Yes, sir. Q. What was the correct way of spelling this name before the divorce was obtained? A. L-u-t-h-e-r. Q. Then at no time since you marriage in 1879 and up until November, 1906, did either you or your husband, Wyman Luther, reside out of either Fayette county or Buchanan county, state of Iowa? A. No, sir. Q. State whether or not since your marriage to Wyman Luther in 1879, and up until November, 1906, either you or he ever resided out of either Fayette county or Buchanan county, Iowa. A. No, sir. Q. Did you, or did you not, reside out of those counties? A. We did not. I don't think. Q. In your petition in the original divorce case you stated your husband had been absent in Dakota. Did your husband ever reside in Dakota after you were married, or was that before? A. Well, if he has been in Dakota, he wasn't there very long. Q. Do you know he resided in Dakota at any time after your marriage to him; that is, I mean, Wyman Luther? A. I didn't know he was ever in Dakota. Q. You swore to it in your petition did you not? A. I don't think so. . . Q. If your husband was ever in Dakota, you had no knowledge of it? A. No, sir. Q. Did you ever have any knowledge of it? A. Well, as I said a short time ago, just a few days ago I was talking with a friend of mine, and he said he thought he had been in Dakota a short time. Q. That is, a friend told you that? A. Yes, sir. Q. Recently? A. Yes, sir.

Q. Within the last month ?   A. Within the last few days.
Q. Was that the first knowledge you ever had of your husband being out of the state, had been in Dakota ?   A. Yes, sir.

Other witnesses also confirmed this, testimony as to the residence of the parties to the divorce proceeding, and it was agreed at the time of the trial in the present case that defendant Luther was then living in Jackson township, - Fayette county.   While most of this testimony was objected to, it was doubtless admissible to show that the court had jurisdiction of the divorce proceedings in fact, or, to speak with more accuracy, that jurisdictional facts existed when the divorce proceedings were instituted and the decree rendered.   There is no claim of fraud or collusion, and the sole question in this connection is the claim that, by reason of the defects in the petition, the court was without jurisdiction.   Had the notice to the defendant of the divorce proceeding been constructive only, had he been a nonresident of the state, and had he not entered an appearance in the suit, doubtless plaintiff's contention in this regard should prevail; but the defendant was a resident of the county and state, was personally served with notice in the county of his residence, and appeared and filed answer to the suit.   He did not challenge the sufficiency of the petition in any respect, but took issue with the plaintiff in the action upon certain of the grounds alleged for granting the divorce.   Now, while it is true that the parties to a divorce case can not consent either to a divorce or to a decree, yet a defendant to such a suit may waive certain defects in the petition just as in any other case, provided this waiver is not fraudulent or collusive.   Of course, the parties can not by agreement confer jurisdiction, if the jurisdictional facts do not exist.   But if they in fact exist, and the petition filed is not challenged, it will be held sufficient where the defendant appears and by answer waives the defects in the pleading.   See *In re*

*James' Estate,* 99 Cal. 374 (33 Pac. 1122, 37 Am. St. Rep. 60); *Hunt v. Hunt,* 72 N. Y. 217 (28 Am. Rep. 129); *Ayres v. Harshman et al.,* 66 Ind. 291; *McFarlane v. Cornelius,* 43 Or. 513 (73 Pac. 325, 74 Pac. 468); *Finch v. Frymise* (Tenn. Ch. App.) 36 S. W. 883; *Rush v. Rush,* 46 Iowa, 648; *Hake v. Fink,* 9 Watts (Pa.) 336; *Ruger v. Heckel,* 85 N. Y. 483; *Kinnier v. Kinnier,* 45 N. Y. 535 (6 Am. Rep. 132).

In the case last cited it is said:

Having jurisdiction of the subject-matter and of the parties, the other questions relating to the pleadings and the form and manner of procedure were matters of regularity merely, for which the judgment can not be questioned collaterally. In *Shottenkirk v. Wheeler,* 3 Johns. Ch. (N. Y.) 276, the court said: 'There is no case in which equity has ever undertaken to question a judgment for irregularity.' . . . Viewing them in the most favorable light for the plaintiff, the question is presented whether the Illinois decree can be attacked in this state in a collateral action because the plaintiff in that action was not actually a *bona fide* resident of that state at the time. I think not. It is conceded he was there, appeared in that court, filed his bill, and took the decree. The question whether he was a resident there, so as to enable him to file his bill, was for that court to determine, and although it may have decided erroneously, the decision can not affect the validity of the judgment. The status of all persons within a state is exclusively for that state to determine for itself. . . . A wrong decision does not impair the power to decide, or the validity of the decision when questioned collaterally. . . . This decree was binding upon the parties to it, within this rule. No fraud is alleged by either against the other, and neither could assert that it was not a valid judgment, as they were both equally guilty of the fraud. Bishop, Marriage, 706. It effectually divorced the parties to it, and their marriage was no longer in force in any legal sense. The plaintiff in this action has not been defrauded, nor is he injured by it. The plaintiff was entitled to marry a marriageable person, and though she may not have been, in other respects, all he

anticipated or all that was desirable, yet she was competent to marry, because her former marriage was not then in force, and, being competent, it is of no legal consequence to the plaintiff how she became so.    Conceding fraud as alleged, he can not avail himself of it.    His success in this case would have no effect upon the status of the former husband, while the position of the defendant would be anomalous.    By the judgment in this action, she would be declared the wife of her former husband, and by the judgment of another court, equally binding upon her, she would be declared not to be his wife.    She could not claim marital rights from either husband, and it would be at least hazardous to marry another.  .  .  .    Nor can I assent to the reason given for allowing the husband to repudiate the binding force of the judgment upon him, after voluntarily submitting himself to the jurisdiction of the court, and litigating the case upon its merits.    As to him, the questions litigated were *res adjudicata.*

In the *McFarlane* case, *supra,* the court said:

It is also contended by plaintiff's counsel that the complaint in the divorce suit did not state facts sufficient to authorize a decree dissolving the marriage contract, and for this reason no error was committed in rejecting the judgment roll therein.    In the trial of that suit the court necessarily determined that the complaint was sufficient, and, there having been some facts alleged upon which this conclusion was based, the decree is not void, and hence not vulnerable to collateral attack.    *Woodward v. Baker,* 10 Or. 491; *Berry v. King,* 15 Or. 165 (13 Pac. 772); *Morrill v. Morrill,* 20 Or. 96 (25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95); *Crabill v. Crabill,* 22 Or. 588 (30 Pac. 320); *Bank of Colfax v. Richardson,* 34 Or. 518 (54 Pac. 359, 75 Am. St. Rep. 664); *Altman v. School District,* 35 Or. 85 (56 Pac. 291, 76 Am. St. Rep. 468); *McNary v. Bush,* 35 Or. 114 (56 Pac. 646); *George v. Nowlan,* 38 Or. 537 (64 Pac. 1).    See, also, *Mengel v. Mengel,* 145 Iowa, 737, which is clearly in point.)

That this proceeding is a collateral attack upon a divorce decree must ever be kept in mind, for the rules we have in mind and are announcing have reference only to

such an attack. The defendant appeared to the divorce case and filed an answer, and he could have challenged the sufficiency of the petition, but did not do so. Had he demurred, doubtless his demurrer would have been sustained, and in that event plaintiff could have amended. As he did not demur, he waived the defect in the pleading. The court had jurisdiction of the general subject and of the parties, and the facts shown demonstrate that the court also had jurisdiction of the particular case.

In support of the judgment against a collateral attack, we must assume that the trial court found that it had jurisdiction, and that all the matters necessary to that jurisdiction were established. Had the defendant to the divorce action appealed, an entirely different case would be presented. Upon such an appeal the rule in *Pinkney v. Pinkney,* 4 G. Greene, 324, would apply. But he did not appeal, and although alive and a resident of the county where this action was brought, he was not made a party to the instant suit.

3. SAME: jurisdiction: presumption.

Plaintiffs herein are in no position to insist upon a new trial of the divorce proceeding. They are neither parties nor privies thereto. They claim nothing through either of the parties to the divorce proceeding, and are not asking a new trial of that action. They are seeking to avoid a decree of divorce in order to make the marriage of their deceased father unlawful, and thus deprive the defendant, to whom their father was married, of any share of his estate. In order to do this, they must show that the divorce decree, which is fair on its face, was and is absolutely void because the court which granted it had no jurisdiction. This we think they have not done. Courts very properly manifest great reluctance in setting aside decrees of the divorce after a second marriage has taken place, and will not do so save upon the most satisfactory showing. A verified petition is

4. SAME: cancellation of decree: collateral attack.

required by section 3173 of the Code but the universal holding is that this requirement is not jurisdictional. See *McCraney v. McCraney,* 5 Iowa, 232-254; *Ellis v. White,* 61 Iowa, 644; *Van Duzer v. Van Duzer,* 65 Iowa, 625; *Cooper v. Sunderland,* 3 Iowa, 114.

Without quoting from these cases, it is sufficient to say that the principles announced therein are applicable here, and, followed to their logical conclusion, must result in an affirmance of the judgment. Enough has been said to justify the conclusion of the trial court. However, there are other facts which in themselves are sufficient to defeat the plaintiff's action.

The defendant in the divorce suit, although a resident of the county where this present suit was commenced, was not made a party to the proceedings. He is vitally inter-

5. SAME: ested in the suit, and, if this be a direct
   parties. attack upon the decree of divorce, he was not only a necessary, but an indispensable party. See section 4091 *et seq.* of the Code; *Day v. Goodwin,* 104 Iowa, 374. Even if the attack be regarded as collateral, we think he should have been made a party. He is entitled to know whether he is the lawful husband of the defendant; for he can not be her husband for some purposes, and a divorced spouse for all others. *Fulliam v. Drake,* 105 Iowa, 615.

It may be that, if the decree were absolutely void upon its face, he would not be a necessary party. But the decree is fair on its face and the same presumptions attend it as if the action were an ordinary one before a court of general jurisdiction. When a collateral attack is made upon it and proof *aliunde* is required, we think the better rule is that he should be made a party.

Again, the defendant was married to King at the time of his death, and no effort was made to set aside or annul the marriage until after his death; and this attempt was by a purely collateral proceeding. In many cases it has

been held that neither a suit for divorce nor to annul
6. MARRIAGE:          marriage will lie after the death of one of the
action to annul.     parties. See *Richardson v. Stowe*, 102 Mo.
33 (14 S. W. 810); *Barney v. Barney*, 14 Iowa, 189;
*Rawson v. Rawson*, 156 Mass. 578 (31 N. E. 653); *Par-
ker's Appeal*, 44 Pa. 309; *Kirschner v. Dietrich*, 110 Cal.
502 (42 Pac. 1064); *Zoellner v. Zoellner*, 46 Mich. 511
(9 N. W. 831); *Roberts v. Roberts*, 19 R. I. 349 (33 Atl.
872).

Of course, if the marriage to King were absolutely
void because defendant had a husband then living from
whom she had not been divorced, no decree of annulment
was necessary. But this is not the fact here. There was an
apparently valid decree of divorce of record when defend-
ant married King, and this, as we have seen, was not sub-
ject to collateral attack, unless absolutely void. It was not
void, but voidable, and we think a nullity suit should have
been commenced before the death of King.

On the whole record, we think that the decree of the
district court should be and it is,—*Affirmed.*