JOHN W. MAIN, Appellant, v. JESSIE E. MAIN, Appellee.

**DIVORCE:** Cruelty—Evidence—Insufficiency. Evidence held insuf-
1  ficient to justify decree of divorce on ground of cruel and inhuman treatment.

**DIVORCE:** Attorney Fees—Suit Money. The first or preliminary
2  order for attorney fees, alimony, and suit money does not exhaust the jurisdiction of the court over such matters. Such matters, necessarily, can only be finally disposed of at the termination of the litigation, when the true condition and value of services can be fully determined.

**DIVORCE:** Attorney Fees—Taxation after Decision on Main Case.
3  Attorney fees may be taxed after entry of decree denying divorce, and after appeal *therefrom* has been taken, said decree expressly reserving the matter of attorney fees for future determination.

DIVORCE:   Attorney Fees—Alimony—Amount—Discretion of Court.
4   The amount of alimony and attorney fees is within the sound
    discretion of the court.

*Appeal from Jasper District Court.*—Hon. K. E. Willcock-
son, Judge.

Wednesday, January 13, 1915.

Action for divorce on the ground of cruel and inhuman
treatment.   Petition dismissed and judgment for defendant
for support money and costs and attorney fees.   Plaintiff
appeals.   The material facts are stated in the opinion.—
*Affirmed.*

*G. M. Tripp* and *W. G. Clements,* for appellants.

*Healy, Burnquist & Thomas, McClain & Campbell,* and
*E. J. Salmon,* for appellee.

Weaver, J.—The petition filed July 3, 1912, shows that
the parties were married on November 16, 1911, and charges
that defendant is a person of "very high and violent temper"
which she does not try to control; that without cause she
curses and swears at plaintiff and applies to him vile names
and epithets; that she possesses a revolver and has repeatedly
threatened to shoot and kill the plaintiff and that finally on
June 3, 1912, she cursed the plaintiff, called him vile names,
and drove him from the home and threatened to kill him, and
that when thus cast out he took his team and started to find
refuge at his farm in the country.   Defendant took another
horse, pursued and overtook plaintiff, again threatening to
kill him, and that seeing her reach for her revolver he sub-
mitted to her demand and drove back to the home "to avoid
further trouble and to protect his person."   On this showing
he asks an absolute divorce.

Defendant appeared to the action and before answer
moved for temporary alimony and suit money and by agree-
ment of counsel the application was allowed in the sum of

$250.00, and the same was duly paid. Answering the petition defendant denied all its allegations of abuse and ill treatment, and further alleged that in June, 1912, the plaintiff wilfully and without cause deserted her and has ever since absented himself from her, refusing to live with her though she has often requested him to return to the bosom of his family. Defendant further alleges that plaintiff is the owner of much valuable property and worth at least $100,000.00, while she herself is without means to defend the action or for her support. She therefore asks that the petition be dismissed and that she have judgment against plaintiff for alimony and support so long as he continues to live apart from her and that she have general relief.

Replying to the answer plaintiff denied the same and alleges that while he has property to the amount of about $100,000.00, he is indebted to the extent of $30,000.00.

The trial court denied the divorce and on November 1, 1912, entered a decree dismissing the petition, reserving the defendant's claim for alimony and support for further consideration, and from this decree plaintiff appealed, April 29, 1913. On February 24, 1913, and before the appeal was taken, defendant filed a petition for separate maintenance and suit money, setting up substantially the same allegations made by her answer to the petition for divorce. The matter of said application and defendant's claim for attorneys' fees and suit money came on for hearing before the court on May 6, 1913. Plaintiff's objection that the matter of alimony had been adjudicated by agreement and payment of $250.00, as hereinbefore mentioned, having been overruled and additional evidence having been heard upon the value of attorney's services and of the use of the house occupied by defendant, a supplemental decree was entered finding defendant entitled to the relief claimed, awarding her the use of the homestead except a specified room or office therein set apart for the storage of plaintiff's personal effects, and requiring plaintiff to pay her $50.00 per month less any sum or sums which may be received

by defendant as rentals, should she lease any part of said premises. The costs including attorneys' fees in the sum of $800.00 were also taxed to the plaintiff. From this order and judgment plaintiff has also appealed.

The appeal presents two questions for our consideration —the merits of the plaintiff's demand for a divorce and the merits of the defendant's claim for support money and attorneys' fees.

I. A reading of the testimony satisfies us that the trial court did not err in dismissing the petition. At the time of the trial plaintiff was sixty-six and the defendant forty-two years of age. Defendant had been twice married, once widowed and once divorced. Plaintiff had been twice married and twice divorced —each time at the suit of his wife. He had subsequently been defendant in an action for breach of promise and had sought the graces of other women with a fervor not altogether platonic. The parties did not drift into love unconsciously as sometimes happens with younger and less experienced couples. Both knew from the start exactly what they wanted. She wanted a husband with money—or money with a husband. He wanted a wife to adorn his house and insure that conjugal felicity of which fate and the divorce court had repeatedly deprived him. With an ardor the warmth of which was in no manner diminished by the frosts of age, he pressed his suit for defendant's favor for a period of a year and a half, though it is but fair to say the speed of his wooing was held in check by the pendency of the damage suit above referred to, which had been brought against him by another member of the sex which has been the bane of his strenuous life. He visited defendant frequently and had ample opportunity to ascertain her virtues, faults and peculiarities—so far at least as these things are ever visible to a suitor before marriage. In short, they had ample opportunity to become well acquainted with each other and form a fair judgment whether marriage was desirable. Considering their worldly experience

1. DIVORCE: cruelty: evidence: insufficiency.

and matrimonial trials it is not credible that either believed the other an angel and in this respect it is quite clear that neither was mistaken. Counsel for plaintiff tell us that defendant is an adventuress who came to Colfax where plaintiff resided for the express purpose of "trapping him into a marriage in order that she might secure a portion of his money," and that their subsequent union was thus brought about with an ulterior view to her financial advantage. In support of this claim a woman testifying for plaintiff states that shortly before the marriage she said to defendant, "No woman of our age would marry an old man of seventy unless she married him for money," and that defendant responded, "You are darned right they don't. If there wasn't some money back of old John Main I wouldn't marry him," and that to this remark she added the further information that she came to Colfax at the suggestion of friends who told her she might there trap a rich old widower and that she did come and "set her trap" for plaintiff and "caught him." Waiving the improbability that a wise trapper, such as defendant is said to be, would be bragging of her catch to another woman before the trap was sprung, and accepting the truth of the story, it is very far from affording ground for a divorce. It may show a lack of affection and lay bare the sordid motive which prompts marriages of the kind we have here to deal with, but it is otherwise irrelevant to the issue. The desire for a home and the comforts of wealth has been the controlling influence of many marriages, especially of those who have passed the bloom of youth, and it is not at all inconsistent with a faithful observance of all the duties and proprieties of the married state. Strategy and management in securing an eligible matrimonial partner are not the exclusive privilege of the man, and the game law of the state provides no closed season against the kind of "trapping" of which appellant complains.

That this marriage has proven an unhappy one is perfectly clear and that neither has treated the other with consideration and kindness which ought to mark the conduct of

husband and wife we have no doubt. But the charges of extreme cruelty endangering life are by no means sustained. We shall not take the time to embody in this opinion the testimony bearing upon that question. The squabbles and quarrels between the parties as related by them upon the witness stand are as a rule trivial to the verge of ridiculous. The threat or assault which plaintiff seems to think most serious and the only one which is specifically charged in the petition dwindles in his testimony to the charge that when plaintiff took to his carriage and sought to escape to his farm he was pursued and overtaken by the defendant who insisted in very ungentle terms that he return home, and that upon his refusal to do so she threatened to kill him and began feeling under her skirt in a manner which convinced him she had a revolver in her stocking, whereupon he turned his horses toward town and drove back at top speed, closely pursued by defendant breathing threatenings and slaughter. Defendant's story of this episode is of a very different character and if she tells the truth plaintiff was never in the slightest danger of bodily injury. We do not undertake to say which is the more credible. Assuming that the parties are of equal veracity or inveracity— which is the charitable view—there is a manifest lack of that preponderance of evidence for the plaintiff which justifies the court in dissolving the marriage contract. Certain it is that plaintiff has failed to make good the one material allegation of his petition that his life is or will be endangered at the hands of his wife.

The profane and abusive language which plaintiff claims was heaped upon him by the defendant is quite generally denied by her, though enough perhaps is admitted to add an unsavory spice to their domestic discussions whenever these became animated. It must be said, however, that in vigorousness of diatribe plaintiff was himself at least a good second, and if we may judge from their own statements neither is made of that delicate moral fibre which characterizes those whom hard words can kill. While marriage is a civil contract

it is one against the obligation of which the common-law plea of failure of consideration is of no avail. The grounds of divorce are purely statutory and of these, as we have already said, none has been established.

II. Turning next to the exceptions taken to the supplemental decree, plaintiff first complains that the matter of attorneys' fees and suit money was adjudicated and disposed of by the agreement of the parties and the order of the court made upon defendant's motion prior to the filing of the answer, and that it was therefore error to allow an additional sum in the final order.

2. DIVORCE: attorney fees: suit money.

We are of the opinion that the authority of the court over the allowance of alimony, suit money and attorneys' fees was not exhausted by the original order. The original application and the order made thereon were necessarily of a preliminary or interlocutory character. A wife defendant in a divorce case is entitled to a sufficient allowance for the efficient preparation and presentation of her defense, but no more, and what is a reasonable sum for this purpose cannot ordinarily be seen or known in advance with any certainty. The plaintiff may repent his action and dismiss the proceeding in time to avoid the necessity of great labor or expense on her part in preparing a defense. She may herself conclude to make no very serious defense. The amount of labor and preparation for her defense and for the conduct of the case may prove greater or less than could reasonably have been anticipated. In short, it is only when the case has reached or is reaching its final adjudication that the court is in position to fix the allowance with due regard to the necessities of the defense. We can see no reason, then, why the court may not at the outset grant such allowance as will enable the defendant to meet the immediate needs of her defense and in the final disposition of the case add thereto such sum as may appear just and equitable in view of all the circumstances. Such a rule works for the protection of the plaintiff

no less than the defendant. To hold otherwise and say the amount must be fixed once and for all would compel the court upon the first application to allow a much more substantial sum than it would otherwise be likely to do, and thus make it possible for a wife having no real defense to secure a liberal allowance of suit money and upon its payment abandon all further contest.

The rule we have here suggested finds support in the proposition that the court in disposing of a divorce case may tax attorneys' fees as costs and this implies that such taxation shall be with reference to the value of the services performed. *Wilson v. Wilson,* 40 Iowa 230.

It has also been expressly decided that an interlocutory allowance of attorneys' fees is not such an adjudication of the husband's liability that he may not be held for an additional amount if the services of counsel were reasonably worth it. *Clyde v. Peavy,* 74 Iowa 47.

The discussion in the opinion rendered in the cited case is quite conclusive upon the question here raised by the plaintiff and his exception cannot be sustained.

It is next objected that plaintiff had appealed before the taxation of the attorneys' fees made in the trial court and the order was therefore entered without jurisdiction. It appears from an examination of the record that the only thing decided in the original decree from which plaintiff appealed was that plaintiff had failed to sustain his alleged ground for divorce and that the petition be dismissed. The court had not yet taxed the costs nor had any such order been made when he took his first appeal. By the express terms of that adjudication it did not include the claim for attorneys' fees or support. Again the order complained of expressly recites that when the supplementary hearing came on both parties appeared thereto conceding of record that an issue upon the defendant's claim for attorneys' fees and alimony had been joined and submitted the same for the decision of the

3. DIVORCE: attorney fees: taxation after decision on main case.

court and upon entry of the supplemental order plaintiff at once appealed therefrom. As we look at it, the authority of the trial court over the allowance of alimony and taxation of costs, including attorneys' fees, was not superseded or lost until the appeal which plaintiff took from the order allowing them. The appeal from the original decree took to the supreme court only those questions and matters which that decree decided. The order was not void for the want of jurisdiction. It will also be remembered that before the first appeal was taken, defendant had filed her petition or motion for the allowance in her favor and that the same was then pending and not disposed of until the hearing last mentioned.

It is further objected that the allowance made is excessive. The amount to be granted in such cases is largely within the sound discretion of the trial court and will not be disturbed in the absence of apparent abuse of

**4. DIVORCE: attorney fees: alimony: amount: discretion of court.** such discretion. We see nothing unreasonable in the allowance made to the wife. The plaintiff has seen fit to withdraw from the home upon what we have found insufficient grounds and he is in duty bound to contribute a reasonable amount for his wife's support. Fifty dollars per month is not an extravagant sum upon which to live and maintain a home. If he can do better by returning to his home, living peaceably with his wife and supplying her reasonable needs as married men and heads of families ordinarily do, there is no law to prevent him from pursuing that course, and when the family relation has been restored the court has undoubted power to set aside the order to which he now objects. The attorneys' fees taxed are liberal but we think not excessive and we cannot attempt to interfere with it.

We discover no grounds for disturbing the decree or order appealed from and they are—*Affirmed.*

DEEMER, C. J., EVANS, LADD and GAYNOR, JJ., concur.