ELLA L. C. LINDSAY, Appellant, v. JOHN J. LINDSAY, Appellee.

**PLEADING:** Want of Verification—Waiver.  Failure to move to
1  strike an unverified answer works a waiver of the defect.

**AFFIDAVITS:** Cross-Examination of Affiant Discretionary.  Whether
2  an affiant shall be called for personal cross-examination is very
largely within the discretion of the court.  (Sec. 4678, Code,
1897.)

**DIVORCE:** Wife Liable for Temporary Alimony and Suit Money.
3  A wife, plaintiff in a divorce action, may, on a proper showing,
be compelled to pay temporary alimony and suit money to an
impecunious husband.

**DIVORCE:** Insufficient Temporary Alimony.  In the absence of a
4  definite showing of inadequacy in the allowance of temporary
alimony, the appellate court will decline to interfere, and will
leave the matter for adjustment on final hearing on the merits.

*Appeal from Delaware District Court.—*H. B. BOIES, *Judge.*

JULY 6, 1920.

IN this action for divorce, the defendant made application, and the court allowed money for his support, pending the hearing on the merits, and for suit money to enable defendant to present his defense and his cross-petition on the merits.  The court ordered, and judgment was entered accordingly, that plaintiff pay $15 per week, and $250 suit money.  The plaintiff appeals, claiming that the court had no power, under the statute, to make any allowance, and that, under the evidence and circumstances, none should have been allowed, in any event.  After plaintiff had perfected her appeal, the defendant also appealed, on the ground that the allowance made was too small.  Plaintiff is the appellant.—*Affirmed on both appeals.*

*Trewin, Simmons & Trewin,* for appellant.

*A. M. Cloud, Yoran & Yoran, E. B. Stiles, F. B. Blair,* and *Arnold & Arnold,* for appellee.

PRESTON, J.—The parties were married in 1887. At that time, defendant was a young, practicing physician and surgeon, with little means. Plaintiff testifies that he was considerably in debt, and had very little income. Prior to February 4, 1917, defendant had a breakdown, physically and mentally. On Sunday morning, February 4th, defendant was found in his office, with an ugly wound in his neck. He was on the couch, partly clothed, and the body cold. He had attempted suicide. A few days thereafter, and on February 7, 1917, upon plaintiff's undertaking to be responsible for his treatment, he was taken to a sanitarium at Hinsdale, Illinois. He seemed to improve for a time, but afterwards became worse, and his condition was quite serious. Later, he was taken back to the town of his residence, but not to his home, or rather, plaintiff's home. On February 20, 1917, plaintiff caused an original notice of this divorce proceeding to be served upon defendant at Hinsdale, and on February 28, 1917, she filed her petition for divorce, alleging cruel and inhuman treatment and habitual drunkenness. The petition goes somewhat into details as to the alleged treatment by defendant, some of which defendant, in the motion to strike, claims were frivolous and scandalous. She claims that defendant has handled her property, and has not accounted for the receipts, and that she has largely supported him; that defendant demanded that plaintiff should turn over to him money or property; that he circulated reports in the community that plaintiff and her daughter were spending defendant's earnings and income, and so on. Plaintiff, at her expense, caused the petition to be published in full in a newspaper in the town where the parties lived. On October 9, 1917, defendant filed his unverified answer, admitting the marriage, and so on, and denying all other

allegations in the petition; and, on January 8, 1918, he
filed an amendment to his answer, setting up a cross-peti-
tion, which was verified, asking a divorce from the plaintiff,
and alleging that, for several years, plaintiff had been
guilty of such cruel and inhuman treatment as to endanger
his life; that she continuously planned to secure from
defendant all his property, and to transfer all his earn-
ings to her; that, though they had a beautiful home, all
furnished, she compelled him, for many months, to use the
cellar as their abode, and refused to allow defendant to
occupy other parts of the house; that, for many years,
plaintiff defamed defendant's character by making false
and slanderous statements concerning him, and ruining
his practice, and so on; that, because of such treatment,
defendant became excitable and nervous, and is no longer
able to practice his profession; that plaintiff was pre-
sented with considerable property by her father, in his
lifetime, and under his will secured other property; and
that plaintiff has secured all the net proceeds of defend-
ant's earnings; that plaintiff now has property of ap-
proximately $100,000, and defendant is entirely without
means to defend plaintiff's action and prosecute his cross-
petition; that he is ill, and requires large sums of money,
for the payment of doctor's bills, board, and the constant
attendance of a nurse. The reply denies defendant's
claims. Motion for temporary alimony and suit money
was filed, in which the allegations of the cross-petition
were referred to, and the application was supported by
the affidavits of defendant's brother-in-law, who says that,
from long association with defendant, he is familiar with
his family life and financial history and present needs;
that he has read defendant's cross-petition, and believes
the averments therein to be true; that plaintiff is the
owner of a valuable homestead in the city of Manchester,
Iowa, and another dwelling which is rented; also, two
valuable farms in Delaware County, one of 155 acres and
another of 240 acres, and other property in Fayette County
and in South Dakota, and a considerable amount of per-

sonal property; that, before defendant had been at the sanitarium a sufficient time to gain the required benefits, and be restored to his normal condition, plaintiff ordered the sanitarium to give defendant no further credit on her account, after February 28, 1917; that the expense of defendant at the sanitarium was from $35 to $85 per week, and that his expenses at Manchester at a private home are $20 per week, and are likely to continue so for a considerable and indefinite time. The defendant's application was supported also by the affidavit of a Doctor Dittmer, who has been the attending physician of defendant in Manchester for a year. Defendant also alleges that, at the time of the filing of said affidavit, he was suffering from a nervous breakdown, which incapacitated him from earning a livelihood, and that there is little, if any, hope of his ever being able to earn a living; that, before said breakdown, and down to the time thereof, which breakdown occurred about a year before, defendant had a lucrative practice. The plaintiff resisted defendant's application, and supported the resistance by offering court records showing confession of judgment by defendant on his notes that were barred, given to some of his relatives, and the sale of defendant's interest in an estate at about $4,500; also, plaintiff's petition and answer to cross-petition, and her affidavit; the affidavit of her daughter Florence; the affidavits of Dr. Moyer and one Tompkins, an accountant, who examined defendant's books, which books were quite incompletely kept, and which did not show that any of defendant's individual income or property went into plaintiff's property. She stated that, so far as the books show, defendant received from her properties, or from her, amounts at least equal to disbursements by him for repairs and improvements on her property; that the examination by the accountant was from the years 1904 to 1917, but that some of the books were missing, and for some of the years he did not mention the receipts from plaintiff's farms; that he examined all the books that were available. In rebuttal, defendant offered the evidence of his

sister and her husband, and other witnesses, and addi-
tional affidavits by some of them. The general tendency
of the evidence is to sustain the claims of the different
parties. We think it unnecessary to go into the details.
The plaintiff denies that she is worth $100,000. The rec-
ord does show, however, that she has considerable prop-
erty, though the value of it is not given definitely by any
of the witnesses. Dr. Moyer first visited defendant at the
sanitarium, February 11, 1917, and expressed a view that
it was a case of drug addiction, grafted primarily on an
unstable nervous system, with certain physical defects that
appeared later in life; that his teeth were bad,—had
pyorrhea and several abscesses, which depressed the gen-
eral health; that defendant refused to have his teeth re-
moved. Plaintiff says that defendant had been troubled
with infected teeth for several years. That, on February
24th, defendant had improved physically and mentally, and
at that time, there was·no trace of illusion or aberration,
with one special characteristic of alcoholic cases; that de-
fendant said to him that, prior to the attempted suicide, he
had been taking large quantities of bromides, and had used
alcoholic liquors freely, and tobacco in large quantities;
that, at that time, there was no good reason why defend-
ant should remain in the institution, because he had gotten
about all the benefit he would get; that, at that time, the
doctor advised that defendant leave the institution next
week; that, thereupon, plaintiff gave notice that she would
not be responsible for further expense at the sanitarium.
Defendant, however, remained at the institution, and was
visited again by Dr. Moyer, March 14, 1917, and he found
defendant worse, and found a condition somewhat at vari-
ance with his former conclusions, and that he had been
mistaken previously, in part at least; and, on June 14,
1917, Dr. Moyer again visited defendant at the sanitarium,
and says that defendant was then losing ground rapidly,
and that, if he should fail as much in the next two weeks
as he had in the past two months, his condition would be

critical. Thereafter, defendant was brought to Manchester, Iowa.

The trial court found, among other things, that, soon after defendant was taken to the sanitarium, plaintiff notified the institution that she would no longer be responsible for her husband's bills, and at the same time filed original notice on the defendant of the divorce suit; and that she has, at all times since, failed and refused to furnish anything towards defendant's support, or for his care or medical treatment; that defendant, at the time of the commencement of this action, and ever since, has been and is now sick, without earning capacity, and without means to support himself, and has no funds with which to defend the action or prosecute his cross-petition; that plaintiff is amply able to provide for her husband, without hardship to herself; that Section 3177 of the Code is sufficient authority under which the court can require plaintiff to pay temporary alimony for the separate support and maintenance of her husband, and suit money to enable him to defend this action and prosecute the cross-petition; and that this is a proper case for such allowance. These findings of fact are sustained by the evidence, and we think the court's conclusions of law are correct.

It is said by plaintiff that defendant voluntarily left his home, before the attempted suicide, and that he did not return to his home when he left the sanitarium. This last is accounted for, doubtless, because plaintiff had already brought a suit for divorce against him, which was then pending. There are one or two preliminary matters that may be considered briefly before going to the principal question.

1. Appellant makes a point that the answer originally filed by defendant was not verified. There was no motion to strike for that reason. The objection was waived. We have no occasion to pass on the effect of failure to verify a petition. Code Section 3588; *Rush v. Rush*, 46 Iowa 648; *Richardson v. King*, 157 Iowa 287, 295.

1. PLEADING: want of verification: waiver.

We do not find that defendant filed any affidavit himself. It is stated in argument that the defendant's cross-petition was verified, but the abstract does not show that it was verified by the defendant personally.

After Dr. Dittmer's affidavit was filed, he was called for cross-examination, and his evidence shows that, at the time of the hearing of this application, defendant was mentally unbalanced. The evidence on this subject will be referred to more fully in connection with the next paragraph.

2. At the hearing, plaintiff moved that defendant be required to appear in court for cross-examination, for that the motion for temporary alimony is supported by the cross-petition, signed and purporting to be verified by the defendant. She also claimed that such cross-examination would show that none of defendant's net earnings or money or property went into improvements on plaintiff's property, and would show, further, that defendant appropriated large amounts of income from plaintiff's property to his own use, and that there is no foundation in fact for the statements as to the alleged misconduct of plaintiff, as set forth in the cross-petition, and that it will show that defendant has means and property of his own with which to support himself, and pay his attorney, and that his present condition is brought about by his own bad habits and misconduct. This motion to require defendant to appear was supported by an affidavit by the plaintiff, and Dr. Dittmer was then called, who testified, in substance, that, if defendant were called to be examined about his business affairs, his physical condition was such as that he could not undergo such a strain; that defendant wouldn't talk, and wouldn't answer any questions asked by witness; that he would not leave the house without a considerable fight about it,—this due to his mental condition, and that his general physical condition would not warrant it; that defendant formerly weighed 175 pounds, but now weighed

2. AFFIDAVITS: cross-examination of affiant discretionary.

107 pounds; that he refuses to take care of himself, or take a bath; that he refuses to have his night clothes changed, and has for months; that he is mentally unbalanced on his own physical condition; that he thinks taking a bath would produce some mysterious thing; that he will not have his teeth treated for pyorrhea. Witness gives his opinion that defendant would not have the mental ability, and would not come into court and defend the divorce case, and that, if defendant were subjected to a cross-examination as to his financial affairs, he would be very much disturbed about it. He thinks the service of the notice of suit at the sanitarium had a very bad effect on defendant, and says that, after that, there was a change for the worse in his condition. This motion was overruled, but without prejudice to plaintiff to renew the application at some future date. The ruling appears in the abstract before the evidence of Dr. Dittmer, but evidently it was after.

The statute provides that, where an affidavit is filed, the person making it may be required to appear for cross-examination. Code Section 4678. We have held that it is a matter of discretion with the trial court whether he will require it. *State v. Bitter Root Val. Irr. Co.*, 185 Iowa 60. See, also, *McCombs v. Travelers Ins. Co.*, 159 Iowa 445. There was no affidavit filed by the defendant,—simply his verified cross-petition; and the proposed cross-examination was on that, and, for the most part, would bear upon the merits of the case. Under the circumstances, we think the trial court did not err in overruling such motion.

3. A party applying for temporary alimony is not required to prove in advance a case entitling to divorce. *Campbell v. Campbell,* 73 Iowa 482; *Wick v. Beck,* 171 Iowa 115, 142; *Main v. Main,* 168 Iowa 353, 360; *Barnes v. Barnes,* 59 Iowa 456. The general rule in this state is that it is within the power and duty of a court, where the opposing spouse is without means to make defense, and is in need of maintenance, to require the opposite party to

3. DIVORCE:. wife liable for tempo-rary alimony and suit money.

pay the same, if able to do so. Under such circumstances, the public has an interest in the matter, and public policy, as well as the statutes, authorizes and requires it. Such applications are made more frequently by the wife, for the reason, we assume, that ordinarily the husband controls the finances. The wife would be at the mercy of the husband in his application for a divorce, if she is without means. We see no reason why the same rule ought not to apply where, as here, the suit is by the wife, who has means, and the application made by the husband, who is without means. It may be, as contended by appellant, that, at common law, the wife is not responsible for support or counsel fees for the husband. This seems to be the rule even as to permanent alimony, but there may be statutory authority to the contrary. 19 Corpus Juris 204. We have held that permanent alimony may be awarded to the husband. *McDonald v. McDonald,* 117 Iowa 307. They say, too, that the sections of our statute, Sections 3153 to 3170, in Chapter 2, Title XVI, of the Code, do not change this rule. The contention is that Code Section 3177 provides for a provisional summary remedy to meet the exigencies of a case where the family relationship is broken up, and to provide that, where the obligation of support exists, under Section 3165, Code Supplement, 1913, the court may order provision for support and suit money to prosecute or defend the action. Code Section 3179 provides that, in making such order, the court is to take into consideration the age and sex of the plaintiff, the physical and pecuniary condition, and other pertinent matters. The use of the word "sex" would indicate that it was contemplated that either party could make the application. If it had been contemplated that only the wife could make such application, it would have been unnecessary to use the word. Section 3177 is found in Chapter 3, Title XVI, and we think it is not controlled or conditioned upon the preceding chapter. Section 3177 is a special provision, relating to maintenance and rights of parties during litiga-

tion. An allowance thereunder has been sustained, as within the power and jurisdiction of a trial court. Appellee cites at this point *Hamilton v. Hamilton,* 129 Iowa 628, 630, *Mengel v. Mengel,* 145 Iowa 737 (157 Iowa 630), and argues that the husband, under the circumstances shown here, may make the application and have the allowance, whatever the rule may have been at common law. It is argued by appellant that defendant's mental and physical condition was caused by his habits before the divorce suit was commenced. This may be so, and it may be so determined on the final hearing. But we think the vital point is as to what his condition was and is at the time of the hearing of the application and the trial, and whether he shall be given a reasonable opportunity to defend against the plaintiff's charges, and to prosecute the cross-petition. The order and judgment are sustained and affirmed as to plaintiff's appeal.

4. As to the defendant's appeal, we think, to say the least, that the order of the court as to support was conservative, but it is subject to modification in the district court, and may be increased or decreased upon proper showing. 19 Corpus Juris 241; *Mengel v. Mengel,* 157 Iowa 630. There seems to be some bitterness between the parties, and it may be a long-drawn-out contest. The court has a general knowledge, himself, of value of support, attorney's fees, and so on. The principal witnesses for plaintiff were the plaintiff herself and her daughter; and altogether, on this hearing, only five or six other witnesses were used. There is no showing in the application as to the number of witnesses likely to be heard on the trial on the merits, nor the length of time that the trial is likely to last. There was evidence tending to show that it was costing $20 per week for the care and support of defendant in Manchester, a part of which was being furnished by defendant's sister or other relatives, as we understand it. This showing was in the affidavit of one Klaus, which was filed with the application, who says that such continued

4. DIVORCE: insufficient temporary alimony.

expense is likely to continue for a considerable and indefinite time. It may be that the statement is somewhat indefinite. Defendant has filed in this court an affidavit of one Burrington, who is giving the defendant the care, and has, since August, 1917, and down to January, 1919, who says that, during all said time, his agreed compensation was $20 per week. This affidavit was not before the district court. Under the circumstances, we prefer that the district court should determine the matter, if any additional proper showing is made there. We assume that the allowance for support and suit money, as fixed by the district court, stands, and will continue from the time it was made until the final hearing, unless modified by the district court, upon a proper and sufficient showing. An application was filed and submitted with the case, asking an additional allowance for attorney's fees in this court, and for printing. Under the rule, the printing will now be paid for by the appellant; but we think there should be an additional allowance for attorney's fees, for preparing the argument and attending oral argument in this court, and $100 will be allowed therefor. The appeal of defendant is affirmed.—*Affirmed on both appeals.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.