## KNIGHT *v.* BOND & BROTHER.

1. A man having a wife and children with whom he permanently resided in a given county did not, by accepting a contract in another county, renting a furnished house therein, and occupying the same with his family during the period covered by the performance of such contract, acquire a domicile in the latter county, when he did not intend to abandon his domicile in the county first referred to or that he or his family should permanently reside elsewhere, but did intend that his and their stay in the county wherein the contract was to be performed should be temporary only and terminate upon the completion thereof.

2. A man with no family, but having a fixed and permanent place of abode in a given county, did not, by temporarily absenting himself therefrom and going to another county for the purpose of performing therein a single contract, with the intention of returning, immediately upon its completion, to

his home, lose his domicile in the county wherein the same was located or acquire a domicile in the other county.

Argued February 1, — Decided February 28, 1901.

Action for damages. Before Judge Norwood. City court of Savannah. April 3, 1900.

G. R. Bond testified: I am one of the defendants in this case, a brother of the other defendant. I was born in DeKalb county, and have never been out of that county as a permanent resident. Being a contracting carpenter, I have gone around in different counties over the State, doing jobs the same as I was doing this job on Tybee for the government. My home and what interest, what property I have, and what taxes I have paid, have always been in DeKalb county, and my taxes are still paid there, and I still live there. I only moved down to Tybee after securing a contract with the government, and I brought my wearing apparel and came down and rented a cottage on the island, already furnished, and moved in there until I completed the job with the government and went back to my house, where I have been ever since, at Lithonia. I brought nothing here but wearing apparel. I brought no household effects, only two or three trunks with our wearing apparel; that is all. My furniture was in my house in DeKalb county, which I had rented, and on which I paid rent all the time that I was away. My furniture was stored, and I paid the rent of the two houses, one at Lithonia and one down here on Tybee. The house on Tybee was a temporary business. I had no intention of staying longer than it required to complete the job. My brother is younger than myself, next to me; and he and I have contracted together for some six or eight years, wherever we could get contracts. His home has always been on the lot of land on which he was born, within three miles of the town of Lithonia, but not in the same house, because my father built a new house on the same lot. He never lived anywhere else. He never paid taxes anywhere else. He would go with me wherever we had jobs, and when he would go back he would go to my mother's. That is his home. He came down here with me, the same as on other jobs, and lived with me in the same house. He brought nothing whatever with him but a valise with a few wearing clothes in it. He has one room furnished in my mother's home. He bought a set

of furniture, and has a room that he calls his. He stays in that room, and it is his room and his furniture. He moved none of the furniture here. My brother and I were here nearly six months. I think it was about the 13th of September when I came here, and my brother came two weeks afterwards, about the 26th. We left Tybee Island here on the last day of March, 1899, and got home on the first day of April, 1899. My contract with the government was to complete the work by the first day of January, which I fully expected to do, and return home. I was delayed by the railroad to Tybee being washed away, and did not complete the work until March, three months longer than I calculated.

Cross-examined: My brother and I took contracts wherever we could get them, but we never had a contract outside of the State. We frequently had contracts which called us away from home. Three months was the longest time I was ever away from home, except this time. The principal part of our work was done in Monroe county. My brother has never married. I have been married going on eleven years, and have two children. I never took my family away to any job except this one. I rent a house in Lithonia. I stored my furniture in the house that I had rented, and I rented a part of it to another person. I had the house rented from August to the first of January, and from the first of January I rented another house and had my furniture moved into it. I kept a hotel in Lithonia until about the first of August, and then my time was up, and I rented a house in Lithonia until the first of January. I rented the other house by correspondence while I was on Tybee, and took possession of it on the first of January. I return my furniture in Lithonia for taxation at $500. Own no real estate in DeKalb county. My brother owns some real estate in DeKalb county, jointly with another brother. He owns some town property there in Lithonia individually. He does not reside on the property he owns. My brother is thirty-four years old. I rented the house on Tybee by correspondence after the contract was made. I knew I was the lowest bidder for the contract, but I did not know positively that I had it. I knew I was the lowest bidder during the first days of August, somewhere between the 15th and the 10th, but it was two or three weeks after that before I was notified that I was the successful bidder. The bids had to go to Washington to be approved, and I did not know that my bid was accepted until it had

been approved. The contract was signed on the 25th of August. The woman that I rented the house from in Lithonia moved to Atlanta, but I did not know how long she would stay there, and she would not rent me the house beyond the first of January. She did not return to Lithonia, but the man who sublet from me rented the house from her after the first of January. It was nearly Christmas before she advised me that she was not coming back, and then I had rented the other house. When I rented the house in Lithonia until the first of January, I told the man that sublet from me that my lease was only good to the first of January. I did not know whether I would want to take the house any longer, or whether I wanted to live in Lithonia or not. While I was away he corresponded with this lady and rented the house from her. While I was down here I had my laundry work done in Chatham county. I brought two or three men with me from DeKalb, and I employed one, two, or three men here as I needed them. I employed the plaintiff here. The tinners came from Atlanta; the plasterer was employed here. My letters were addressed to Tybee, and my brother's correspondence was also addressed to Tybee. We lived there continuously until the 31st of March, 1899. I told the man that sublet from me that I did not know whether I would go back to the house or not. I did not know whether I would go back or not; I might be killed. I did tell him I did not know whether I would go back to Lithonia or not. Tybee, of course, was temporarily my home. I gave up keeping the hotel before I made the contract. My brother was never married. He lives with his mother in DeKalb county, with two other brothers younger than himself. He went with me to other counties, wherever we could secure a contract. While we were at Tybee he boarded with me. At the time the suit was served on us we were living on Tybee Island. He is at his home in DeKalb county. He has lived there ever since his birth, except during times that we went around and did those jobs. He pays taxes and everything else there. I do not know any other home he has except that.

*William Pease* and *R. R. Richards*, for plaintiff.
*Milner & Brand*, for defendants.

LUMPKIN, P. J. The plaintiff in error, James M. Knight, brought in the city court of Savannah an action against G. R. Bond and I. A. Bond, as copartners under the firm name of G. R. Bond &

Brother.   The defendants filed a plea to the jurisdiction, alleging that at the time the action was begun they resided in DeKalb county and had never resided in the county of Chatham.   After the evidence was closed, the judge directed a verdict in their favor, and of this Knight complains in his bill of exceptions.   The only testimony bearing upon the question of jurisdiction was that of G. R. Bond, which is set forth in full in the official report preceding this opinion.

1. We think it quite clear that this testimony demanded a finding in favor of G. R. Bond.   Any conclusion that he had abandoned his domicile in the county of DeKalb, or intended to acquire one in the county of Chatham, would have been totally unwarranted.   That he carried his family with him to Tybee Island, and that they lived with him in the cottage thereon which he rented, certainly would not, without more, make him or them residents of Chatham county.   It is plain that he never contemplated that the stay of his family on the island should be otherwise than temporary, and that he took them there for a mere sojourn the length of which was to be limited by the completion of his work.   Under section 1824 of the Civil Code, the domicile of a married man is the place where his family "shall permanently reside, if in this State."   Any finding that the family of G. R. Bond permanently resided, or intended to permanently reside, in Chatham county would have been palpably unfounded.   See, in this connection, *Peacock* v. *Collins*, 110 *Ga.* 281.

2. We have also without difficulty reached the conclusion that the direction of the verdict was right in so far as it related to I. A. Bond.   Under the section of the code just cited, the domicile of a person having no family is "the place where such person shall generally lodge."   In arriving at the meaning which should be given to the words "generally lodge," we do not think it would be proper to entirely ignore all reference to the intention of the person concerned with respect to the matter of choosing or acquiring an abiding place or domicile.   For instance, if a single man, who had for years permanently resided in a given city and lodged there all the while, should go to another city on business and there remain a month, lodging every night in the same house, it would be quite true that as to this brief period he generally lodged in the house in question; but if it was also true that his visit to this city was tem-

porary only and for a particular purpose, and that there was no intention on his part to relinquish his established domicile in the city first mentioned, it could not fairly be said that he had acquired a residence in the city he visited, merely because he generally lodged at the same place therein during the period of his stay. It would be immaterial, of course, whether such a stay was for one month, or two, or three, or any other number of months, provided it did not become so extended as that, in connection with other circumstances, it could be reasonably inferred that there was an actual intention to make a change of domicile. Who would say that a young man having permanent employment in the city of Atlanta had acquired a domicile in Rabun county simply because he went to Tallulah Falls for a summer outing, and actually spent ten or twelve weeks in one of the hotels at that resort? It can not, we think, be seriously questioned that before a single man who has an undoubtedly fixed and established domicile may be said to have changed it, there must be some evidence of an intention so to do. An inspection of the testimony shows that I. A. Bond had been born and reared in DeKalb county; that, with the exception of business trips, he had lived there all his life; that he had a room furnished at his own expense in the house of his mother, and that he had always considered and treated this house as his home and this room as his lodging place. On the other hand, there is nothing in the evidence showing any intention on his part to abandon his domicile in DeKalb or acquire a new one either in Chatham county or anywhere else on the face of the earth.

We do not think anything here ruled is contrary to the decision rendered by this court in *Hinton* v. *Lindsay*, 20 *Ga.* 746. It appears in that case that one Bradford, a single man, had resided with his father in a particular militia district until he left the paternal roof for the purpose of engaging on his own account in the business of teaching school in an adjoining district. Apparently, this was his first business venture, and it is fairly inferable that in leaving his father's house he intended to establish for himself an independent place of abode in the district wherein he was to exercise his profession. That he may have contemplated, at some future day, a return to his father's house was perfectly consistent with the idea of his acquiring in the meantime a permanent domicile elsewhere; and the mere fact that during the time he was

exercising his vocation in an adjoining district he made weekly visits to his father's house in the capacity of a guest would not, in and of itself, warrant the conclusion that he had not formed and carried out an intention to remove therefrom and acquire a residence in the district wherein he was conducting his school. As this was the place where he generally lodged, it was, under all the circumstances disclosed, properly treated as his domicile. Let it be borne in mind that the question really at issue in that case was whether the young man had lost his right to hold his office as a justice of the peace by removing out of the district in which he had been commissioned as such, to wit, the one in which he had formerly resided with his father. If he did not move at all, he did not, of course, forfeit his office; and the sum and substance of the conclusion reached was that he had in point of fact moved out of that district, notwithstanding that after he left he continued to visit his father and spent with him two nights in each week. An examination of the original bill of exceptions in that case shows that it was submitted to the presiding judge upon an agreed statement of facts, the substance of which appears in the official report of the case. The bill of exceptions further discloses that one of the points insisted upon was "that said Bradford had not removed from" the district in which he had been commissioned. In determining whether or not he had done so, the question as to his intention in the matter was necessarily involved, and the judge found as matter of fact that Bradford intended to remove and did remove from his father's house, "where he had previously resided."

It only remains to inquire whether or not I. A. Bond was subject to suit in Chatham county under any of the provisions of section 1825 of the Civil Code. He was certainly not a person who resided "indifferently at two or more places in this State" and, as such, under a duty of electing which of them should be regarded as his domicile. Nor was he a person who "habitually" resided "a portion of the year in one county and another portion in another," so as to authorize third persons to treat him as a resident of either county. We hazard nothing in saying that he did not "habitually" reside a part of the year in DeKalb and another part in Chatham, for he made only one visit to the latter county, and there is nothing to suggest he had the slightest intention of ever going there again. Lastly, he clearly did not belong to that class of "transient

persons whose business or pleasure causes a frequent change of residence." It is true his business necessitated his making occasional trips to places other than his home in DeKalb county, to which he invariably returned, but there is nothing to show that any of his business ventures required on his part "a change of residence."

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., and Cobb, J., absent.*