**GREEN et al. v. JAMES et al.**

No. 19706. Opinion Filed March 10, 1931.

Robert Burns and Biggers, Wilson & Aldridge, for plaintiffs in error.

B. F. Davis, J. A. Patterson, and Edgar A. DeMeules, for defendants in error.

RILEY, J. On December 17, 1926, Lizzie Green, formerly Lizzie Dial, commenced this action in the district court of Seminole county on behalf of herself and as guardian of Leola Dial, her minor child, and against Mose James, Annie E. James, J. A. Patterson, personally and as trustee, the Indian Territory Illuminating Oil Company, a corporation, Foster Petroleum, and Amerada Petroleum Corporation. Plaintiff sought vacation of a decree and judgment in divorce rendered in said court March 17, 1914, dissolving the marriage relation theretofore existing between Lizzie Dial and Raford Dial, now deceased.

Raford Dial, during his lifetime, owned the S. E. ¼ of section 24, township 9 N., range 6 E., Seminole county, Okla. Shortly after the decree of divorce he conveyed the described real estate to Annie E. James. The other defendants acquired various interests in said lands, the oil companies' interests being oil and gas mining leases. The judgment of the trial court was for defendants, quieting their respective interests. Plaintiff appealed, but failed to serve case-made upon the oil companies. Thereafter when confronted with motion to dismiss for such failure, plaintiff dismissed as to the oil companies.

On September 16, 1913, Raford Dial filed his petition for divorce against Lizzie Dial, based upon the ground of abandonment. The petition was signed by "W. H. Bishop, Attorney for Plf," and "Raford Dial." The verification was attempted in this manner:

"Subscribed and sworn to before me this the 16th day of Sept. 1913. W. E. Harber, Notary Public. (Seal) My Commission expires: Dec. 18, 1916."

Lizzie Dial answered, claiming plaintiff had abandoned her, alleged the existence of one child, Leola May Dial, born June 1, 1912, of which the plaintiff was the father, but whom plaintiff had not supported, alleged that plaintiff was an enrolled freedman of the Seminole Tribe of Indians, and owned the land heretofore described, and prayed for $25 per month for the support of their minor child; prayed, further, that plaintiff's petition be denied, "but that if the court should think it to the best interest of all parties concerned that said parties be divorced, that so much of the property of said plaintiff be set off to said defendant as the court shall deem proper for

274

defendant's share in the same and for the keep and maintenance of said minor child, that said defendant be awarded the custody of said minor child, and that said defendant be awarded such other and further relief as to the court seemeth equitable and just."

On March 16, 1914, Raford Dial and Lizzie Dial entered into an agreement in view of the divorce suit pending wherein Lizzie Dial agreed to withdraw her answer filed in said cause wherein she sought "one-eighth of the first party's land and $25 per month alimony," and Lizzie Dial "further agrees not to appear against said first party in said action, especially for the purposes of contesting the issue raised by said answer herein." All of which was based upon a recited consideration of Raford Dial agreeing "to reasonably support a minor child born to said second party shortly after said marriage."

Thereafter and on March 17, 1914, the cause for divorce was heard by Honorable Tom D. McKeown, district judge, and a judgment was rendered which recites the issuance of summons in due time, the failure of defendant to appear or plead, the consideration of the allegations of plaintiff's petition as confessed, the hearing of oral testimony of witnesses, sworn and examined in open court, the residence of plaintiff in good faith for the required period of time, the marriage of plaintiff and defendant, etc. Then follows the finding of abandonment for more than twelve months by defendant of the plaintiff. The decree is "that the marriage relation now existing between Lizzie Dial and Raford Dial be, and the same is, hereby dissolved and both parties are released from the same."

The judgment continues: "It is further ordered that each party hereto have the same property rights which they each had previous in said marriage," and then follows the statutory six-months clause.

Thereafter, and on May 20, 1914, Raford Dial, by warranty deed, conveyed the land heretofore described to his mother, Annie E. James. On June 24, 1916, Raford Dial married Roxie Elliott and from this union four children were born, three of whom survive. In 1922, Raford Dial died and Lizzie Dial attended his funeral. Lizzie Dial well knew of the divorce decree and considered herself single for a time. She knew also of the subsequent marriage of her former husband.

On February 14, 1924, Annie E. James conveyed an undivided one-fourth interest in the oil and gas and other minerals under

the land heretofore described to defendant in error J. A. Patterson.

On August 6, 1924, Annie E. James and J. A. Patterson, joined by their respective spouses, executed an oil and gas mining lease to the lands first described, in favor of one Madkin, who in turn and on August 13, 1924, assigned the same to the I. T. I. O. Company and the Foster Petroleum Company.

On August 10, 1925, Annie E. James conveyed an undivided one-sixteenth interest in the oil and gas and other minerals to the lands first described to J. A. Patterson as trustee.

On November 15, 1925, the I. T. I. O. Company and the Foster Oil Company assigned their said lease, in so far as it covered the east one-half of the southeast one-fourth, to the Amerada Petroleum Company.

On February 23, 1916, Annie E. James conveyed to J. A. Patterson a further three-sixteenths interest to the oil and gas and other minerals existing in said lands, leaving an undivided one-fourth interest in the royalty in the name of the grantor, James.

Twelve years and nine months after the decree of divorce heretofore recited, and four years after Raford Dial's death, Lizzie Dial, appearing as Lizzie Green, filed her petition to vacate the judgment in divorce, wherein it is recited that summons was issued to her and that she filed therein her answer and cross-petition, seeking on behalf of herself and minor child an interest in the lands heretofore described, but that without any further pleading having been filed therein a judgment was rendered as a default judgment without notice and procured by fraud in the representation of plaintiff therein to the court that defendant was in default of a pleading in said cause, when in truth defendant therein had filed a verified answer, not only sufficient to defeat plaintiff's right, but sufficient to entitle defendant therein to a judgment for an interest in the lands described.

The petition alleges that petitioner remained unmarried from the date of March 17, 1914, to the ____ day of ____, 1925, and received no support during said time from Raford Dial, either for herself or her minor child.

Pursuant to the provisions of section 812, C. O. S. 1921, summons was served upon defendants below. Demurrers were overruled.

Defendants answered denying generally, but alleging affirmative defenses as follows:

(1) Setting forth the separation agree-

ment hereinbefore described, wherein Lizzie Dial withdrew her answer in the divorce action and consented to the judgment therein rendered.

(2) That after the judgment in divorce, Raford Dial married another and raised a family, all of which Lizzie Dial well knew. That Lizzie Dial accepted the benefits of said decree of divorce and contracted marriage with Geo. Wright, lived and cohabited with him for eight years after said judgment, and there was born to said George Wright and Lizzie Dial one child now living. That George Wright during the World War made an allotment from his pay as a soldier to his wife, Lizzie Wright, and plaintiff received said money, and that plaintiff is estopped by accepting the benefits of the decree of divorce to now assert its invalidity.

Evidence was introduced which supports the material portions of the answers of defendants.

The trial court found for the defendants, denied the petition of plaintiff to vacate the judgment in divorce. sustained all material allegations in the separate answers, and quieted title of defendants to their respective interests in the land involved.

Appellant contends that the "default judgment against defendant while answer and cross-petition is on file and undisposed of is not proper, and decree rendered thereon is void."

We cannot so hold. True, such action may be erroneous (Crossan v. Cooper, 41 Okla. 281, 137 Pac. 354), but it is not void. Wheatland Grain & Lbr. Co. v. Downing, 68 Okla. 293, 173 Pac. 956; Hughes v. Kepley (Kan.) 58 Pac. 556; Smith v. Finger, 15 Okla. 120, 79 Pac. 759; Wilson v. Porter, 94 Okla. 259, 221 Pac. 713. By the collusive agreement Lizzie Dial agreed to withdraw her answer. She may or may not have done so. At any rate, according to the decree, she was absent and unaccounted for when the case was called, and, therefore, in default in person. Moreover, she has accepted the benefits of the decree of divorce by her subsequent action.

Other cases cited by appellant concerned judgments attacked within the term (sec. 811, C. O. S. 1921). Okla. State Bk. v. Buzzard, 73 Okla. 250, 175 Pac. 750; A., T. & S. F. Ry. Co. v. Lambert, 31 Okla. 300, 121 Pac. 654.

It is next contended that the court was without jurisdiction to enter the divorce decree for the reason that the petition of Raford Dial was not verified as required by statute (section 503, C. O. S. 1921).

We shall not determine whether the petition's verification was in substantial compliance with the statute. Javine v. Javine, 134 Okla. 283, 273 Pac. 267, and Rourke v. Culbertson, 78 Okla. 185, 189 Pac. 533, have determined the point that verification of such a petition is not jurisdictional, the latter case holding:

."The verification of a pleading is not jurisdictional, and the failure to verify is waived if no objection is made and the cause proceeds to trial on the merits."

Also, Richardson v. King (Iowa) 135 N. W. 640, holding:

"A verified petition is required by section 3171 of the Code; but the universal holding is that this requirement is not jurisdictional."

Certain jurisdictions hold to the contrary. 7 Stand. Ency. of Procedure, 785; Brant v. Brant (N. J. Ch.) 71 Atl. 350, Hopkins v. Hopkins, 132 N. C. 22, 43 S. E. 508; De Armond v. De Armond, 92 Tenn. 40, 20 S. W. 422; Rayl v. Rayl (Tenn. Ch. App.) 64 S. W. 309; Nichols v. Nichols, 138 N. C. 108, 38 S. E. 296.

Lizzie Dial had opportunity to object to the verification as made, but instead of objecting thereto, she answered.

We follow the rule established in Oklahoma.

The third proposition is that the decree is void on its face for the reason that it is apparent that a divorce was granted to Lizzie Dial, the defendant, instead of Raford Dial, who was the plaintiff, whereas Lizzie Dial did not ask a divorce. Appellant says:

"We do not deem it necessary to attempt the citation of any authorities or to offer any observation in support of this assignment."

There is no merit in this contention, notwithstanding that the caption of the decree was Lizzie Dial, Plaintiff, v. Raford Dial, Defendant, No. 2474, whereas the petition was styled Raford Dial, Plaintiff, v. Lizzie Dial, Defendant, No. 2474. (See section 179, C. O. S. 1921, and section 296, C. O. S. 1921). In the body of the decree the defendant named is the proper one and the plaintiff named is Raford Dial. The decree of divorce is not to Lizzie, but merely "that the marriage relation now existing between Lizzie Dial and Raford Dial be and the same is hereby dissolved and both parties are released from the same."

The fourth contention is that the stipulation introduced in evidence by defendant as exhibit 7 (C-M. 252) as having been executed between Raford Dial as plaintiff and Lizzie Dial as defendant is void.

The agreement was collusive and probably without consideration. 21 Cyc. 1593; Bishop on Marriage, Divorce & Separation, vol. 1, sec. 72. However, under the circumstances, the appellant cannot avail herself of the mutual fraud at this late date. 2 Bishop, sec. 1548, as therein stated:

"It would be a special novelty for a plaintiff to address the tribunal with 'the defendant and I have been playing a trick on this court, but I discovered he has got the better of me, so please turn the tables on him'." Erdman v. Erdman, 43 Okla. 172, 141 Pac. 965; Newman v. Newman, 27 Okla. 381, 112 Pac. 1007.

Pomeroy, Eq. Jurisprudence (4 Ed.) sec. 395:

"If a contract has been entered into through fraud, or to accomplish any fraudulent purpose, a court of equity will not, at the suit of one of the fraudulent parties—participes doli—while the agreement is still executory, either compel its execution or decree its cancellation, nor after it has been executed, set it aside, and thus restore the plaintiff to the property or other interests which he had fraudulently transferred. Equity will leave such parties in exactly the position in which they have placed themselves, refusing all affirmative aid to either of the fraudulent parties."

The fifth and sixth propositions presented together by appellants are (a) that the legal status of Raford Dial and Lizzie Dial was not changed even though Raford married subsequent to the divorce decree and Lizzie Dial "lived on with another man for a period of time without the sanction of any marriage ceremony," that such conduct did not give validity to the decree, and (b) that if such decree is void on its face, then laches and statutes of limitations do not run, and on account of property rights being involved Lizzie Dial is not estopped to move to vacate said decree of divorce.

We dispose of the last proposition by holding that the decree of divorce was not void, but at most merely voidable and such cases as Rodgers v. Nichols, 15 Okla. 579, 83 Pac. 923, and Clay v. Robertson, 30 Okla. 758, 120 Pac. 1102, where no jurisdiction of the person was obtained, and similarly as in LeClair v. Calls Him, 106 Okla. 247, 233 Pac. 1087, where the instrument making appearance was a forgery, are not applicable, despite the fact that those cases sustained vacation of divorce decree after death of the adverse party where property rights were involved.

It is our opinion that the judgment of divorce is not void upon its face, for from an inspection of the judgment roll it appears that the court had jurisdiction of the parties, the subject-matter, and power to render the particular judgment. No one of these elements was wanting. A judgment is not void in the legal sense unless its invalidity appears on the face of the record. Morgan v. Karcher, 81 Okla. 210, 197 Pac. 433; Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681; Penn Co. v. Potter, 108 Okla. 49, 233 Pac. 700; Bradshaw v. Tinker, 129 Okla. 245, 264 Pac. 162; Savoy Oil Co. v. Emery, 137 Okla. 67, 277 Pac. 1029; Stand. Sav. & Loan Ass'n v. Anthony Wholesale Groc. Co., 62 Okla. 242, 162 Pac. 451; Dickson v. Lowe, 65 Okla. 64, 163 Pac. 523; Jefferson v. Gallagher, 56 Okla. 405, 150 Pac. 1071; Bell v. Ford, 68 Okla. 235, 173 Pac. 524; Abraham v. Homer, 102 Okla. 12, 226 Pac. 45.

"Collusion between the husband and wife in the procurement of the decree * * * would not result in rendering the decree void." Friebe v. Elder (Ind.) 105 N. E. 151; Ellis v. Ellis (Minn.) 56 N. W. 1056.

"It is settled in this state and by the weight of authorities generally that 'a decree of divorce, though procured by collusion of the parties, is not therefore void.' * * * 19 C. J. 168, par. 406; 9 R. C. L. 378. sec. 168." Ex parte Kay (Ala.) 112 So. 147.

"It cannot be treated as nullity. At most it is voidable." McElrath v. McElrath (Minn.) 139 N. W. 708; Larimore v. Knoyle (Kan.) 23 Pac. 708; Nicholson v Nicholson (Ind.) 15 N. E. 223.

In Newcomer v. Newcomer (Iowa) 201 N. W. 579, it was held:

"It is elementary that a decree procured by fraud and duress is voidable and not void."

Consequently, the decree of divorce being merely voidable, Lizzie Dial was by the judgment below, should be, and is by our opinion barred from relief from it by her laches under the general rule as stated in 19 C. J. 170, sec. 424:

"A decree will not be set aside at the instance of a party who has been guilty of laches in applying for relief, especially when one of the parties or both have married again." Lieber v. Lieber (Mo.) 143 S. W. 458; Chase v. Chase (R. I.) 37 Atl. 804; Cummings v. Huddleston, 99 Okla. 195, 226 Pac. 104; James v. James, 131 Okla. 276, 268 Pac. 726; Darrough v. Davis, 135 Okla. 263, 275 Pac. 309.

Apparently appellants recognize the rule

as to laches and statutes of limitation in the event the judgment is voidable, but not void, for they say in their brief, p. 49: "But that the rule would be otherwise if the decree were only voidable."

Reverting to contention (a) presented under the fifth and sixth proposition, we hold that the legal status of Lizzie Dial did change as time went on after the decree of divorce, for she saw children born of the union of her former husband and another, she herself virtually became the common-law wife of another and by that union a child was born, and so accepting the benefits of the decree of divorce, even though it be voidable, by reason of change in her status, she will not be heard to assert its invalidity. Cummings v. Huddleston, 99 Okla. 195, 226 Pac. 104; James v. James, 131 Okla. 276, 268 Pac. 726; Darrough v. Davis, 135 Okla. 263, 275 Pac. 309; 9 R. C. L. 458. sec. 269.

Schouler on Marriage, Divorce and Separation (6 Ed.) vol. 2, sec. 1973, p. 2097, says:

"One who marries on hearing that the spouse had obtained a divorce is estopped to claim that the divorce was illegal and to claim marital rights in the estate of the divorced spouse."

19 C. J. 170, secs. 422-424, states the same rule:

"422. Acceptance of Benefits of Divorce. A party who has acted in reliance on the validity of the decree with full knowledge of its effect cannot after a lapse of time, and especially after the death of the other party, have it set aside because it was obtained by fraud, or without due notice. So, too, the length of time which has elapsed since a decree was rendered and the manner in which the parties have treated each other may operate as an estoppel and preclude either from interfering with the affairs of the other.

"423. Bad Faith. A party seeking to vacate or annul a decree must be actuated by good motives, and not by expectation of personal advantage, and a desire for personal advantage will be presumed from long acquiescence by a defendant in a fraudulent decree which he seeks to set aside.

"424. Lapse of Time. (1) Laches. Except when the court rendering the decree was without jurisdiction, a decree will not be set aside at the instance of a party who has been guilty of laches in applying for the relief, especially when one of the parties or both have married again. Hence, to vacate a decree obtained by fraud the injured party must act promptly after the discovery of the fraud, unless the facts are such as to excuse the delay."

Judgment affirmed.

LESTER, C. J., and HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and CULLISON, J., not participating.

Note.—See under (2) anno. L. R. A. 1917B, 470; 9 R. C. L. p. 421; R. C. L. Perm. Supp. p. 2467; (4) 10 R. C. L. p. 353 et seq.; R. C. L. Perm. Supp. p. 2089; R. C. L. Continuing Perm. Supp. p. 412; (6) anno. L. R. A. 1917B, 500; 9 R. C. L. p. 458; R. C. L. Perm. Supp. p. 2475.