**ILEE M., Appellant,**

v.

**The STATE of Oklahoma, DEPARTMENT OF INSTITUTIONS, SOCIAL AND REHABILITATIVE SERVICES and L. E. Rader, Director of the Department of Institutions, Social and Rehabilitative Services, Appellees.**

No. 49352.

Supreme Court of Oklahoma.

April 11, 1978.

---

Charles R. Hogshead, Tulsa, for appellant.

Donald Lee Ritter, Oklahoma City, for appellees.

BERRY, Justice.

Appeal by mother of Clifford, Marie, Louella and Geronica M. Originally case was filed alleging Clifford and Marie were dependent and neglected children and they were so determined and made wards of the court on July 7, 1969. Later a petition was filed alleging Louella and Geronica were dependent and neglected. The court found the allegations true and they were made wards of the court on September 4, 1974.

Thereafter, on November 20, 1975, court conducted a hearing on unverified motion of appellees, D.I.S.R.S., to terminate appellant's parental rights as to all four children. Appellant entered no objections to the personal or subject matter jurisdiction. From an adverse ruling by trial court appellant has brought this appeal.

Briefly, the record shows the four children of appellant were all by different fathers. Appellant had never married or lived with any one of these men with but one exception, and this for no more than a few months. None had contributed to support of the children.

On June 10, 1975, the children were returned from Arapaho County, Colorado, to Tulsa by juvenile authorities. They had been in foster homes while in Colorado. In July appellant was permitted to visit her children. Due to a mix-up concerning appellant's address, it was necessary to contact her through her attorney. On return to Tulsa the children were placed in separate foster homes, and in order for appellant to be allowed to visit them case worker would pick them up and deliver them to the designated place of visit.

On September 8, 1975, appellant requested to visit children. Case worker asked appellant to call back on September 12, at which time a visit would be arranged. Appellant did not call back until October 16. Case worker testified appellant had not contributed any support money to the D.I.S.R.S. This occurred even though welfare worker urged her to do so to show her good faith in order to prevent her rights to the children from being finally terminated. During this period appellant was gainfully employed, receiving $90 per week.

From time of their return from Colorado, and prior to the hearing appellant wrote no letters, nor sent gifts.

According to appellant's own testimony, the occurrence which precipitated the children's removal from appellant was in January 1975 while in Colorado. All four children were living with appellant and Gary Gay. Appellant took Clifford to the clinic for immunization shots and while there a nurse discovered burns, which appeared to be caused by a cigarette, on the child's neck. Appellant testified she later took the other children for immunization shots and that evening a detective came past her house to get them. According to appellant the detective said:

"Miss M., looks like somebody done burnt the child on the neck and it looks like it was intentional."

Appellant's testimony shows she regularly left home early and came home tired and had little knowledge of the welfare of her children.

The record shows her neglect of all four children. As an example, appellant was told of a burn to Marie's back that occurred during her absence from home. When asked if she got Marie any medical treatment she said:

"No, because I figured it wasn't too bad but I thought to myself I was sick and fell across the bed and went to sleep."

The trial court terminated appellant's parental rights after hearing testimony and arguments of counsel from which ruling appellant appeals.

Generally appellant urges two assignments of error:

1. Admission into evidence at a hearing on termination of parental rights by trial court of evaluation reports made by experts objected to on the grounds they were hearsay testimony and not harmless;

2. Proceeding on unverified motion to terminate parental rights and in a manner other than prescribed by 10 O.S. 1971 § 1103.

This opinion will now be addressed to contentions or arguments in the order presented in briefs.

The dispute concerning evidence lies with its admissibility and its sufficiency.

■ Appellant contends a hearing to terminate parental rights is "adjudicatory" under 10 O.S. 1971 § 1101(e) rather than "dispositional" under provisions of § 1101(f), supra.

10 O.S. 1971, § 1101 provides, in part:

" . . .

"(e) The term 'adjudicatory hearing' means a hearing to determine whether the allegations of a petition under Section 1103 of this Title are supported by the evidence and whether a child should be adjudged to be a ward of the court.

"(f) The term 'dispositional hearing' means a hearing to determine what order of disposition should be made with respect to a child adjudged to be a ward of the court."

Appellant reasons that a hearing to terminate parental rights is an "adjudicatory hearing" and it "must be conducted according to rules of law governing such proceedings."

Citing *In re Johnson*, 214 Kan. 780, 522 P.2d 330 [1974], appellant states "that hearsay evidence was not admissible at the adjudicatory stage of a proceeding to terminate parental rights." Thus, the admission of appellees' exhibits 1, 2 and 3, [evaluations showing, respectively, Clifford's, Marie's, and Louella's emotional and psychological state] was reversible error.

Appellant's brief failed to mention that the cited opinion sustained trial court's finding and used this language:

"We think the evidence before the court excluding the hearsay, virtually compelled a finding of parental unfitness and hence the error in receiving the hearsay was harmless and the judgment must be affirmed."

We hold that under provisions of § 1101(e), supra, an adjudicatory hearing is limited to "whether a child should be adjudged to be a ward of the court", and a dispositional hearing § 1101(f) is to determine what "disposition should be made with respect to the child" after he becomes a ward of the court. However, in either phase of the proceedings both aspects may be considered. In other words at an adjudication hearing to determine neglect, evidence concerning the child's later disposition is not necessarily immaterial or incompetent. This does not mean it is evidence to be considered in the adjudication as to whether the child is dependent and neglected. In the case of a jury at an adjudicatory hearing, evidence that may be proper at a dispositional hearing may be prejudicial and in that event not admissible at a hearing on dependency and neglect.

In considering this opinion we are cognizant of a mother's vested rights to care, custody and management of her child. We know to terminate a parent's rights to a child is a loss of a right and is protected by the Constitution. Even though we hold that under the provisions of the statute § 1101(e), supra, termination of parental rights is a "dispositional hearing", we hold that appellant was entitled to notice and a right to be heard, and a decision based on sufficient competent evidence.

■ In examining the record in the case before us, it supports without contradiction the finding of trial court. The record shows that appellant made no attempt, nor did she show, that conditions had been corrected within 6 months of time the children were adjudged dependent and neglected as provided in § 1130, supra.

Appellant argues that the evaluation reports by experts prepared by and for Colorado juvenile authorities were hearsay and incompetent and therefore inadmissible. Since the record amply supports trial court's finding without reference to these reports [exhibits 1, 2 and 3], we need not consider this contention.

■ Appellant's second assignment of error is that the entire proceeding is void because appellee failed to proceed by a verified petition in the matter of termination of appellant's parental rights as provided in § 1103, supra.

We have dealt at length with this precise issue in *In the Matter of Ernest James C. et al. Ruth P. v. State*, Okl., 578 P.2d 352. We hold that the cited case is dispositive of this assignment of error.

■ Appellant has not made an attempt to show, demonstrate, or argue that she has made any change to improve conditions for the care of her children, or that she could do so.

We have examined the record and weighed the evidence and hold that trial court's holding is not contrary to the law nor against the clear weight of the evidence.

Affirmed.

LAVENDER, V. C. J., and DAVISON, IRWIN and BARNES, JJ., concur.

HODGES, C. J., and WILLIAMS, SIMMS and DOOLIN, JJ., dissent.

DOOLIN, Justice, dissenting.

I dissent. The procedural protections of Title 10, granted to those parents whose children are in jeopardy of being declared dependent or neglected, have been continually denied to parents who are in a much more perilous position of having all rights to raise their children terminated. See the dissent in *Ruth P. v. State of Oklahoma*, 578 P.2d 352 (Okl.1978), where we pointed to the sophistry of holding a termination proceeding is merely another phase of a dispositional hearing not entitled to procedural safeguards. The fallacy of the view of the majority is even more apparent where the time lapse between the original declaration of dependency and neglect and the termination of parental rights is several years. Here the court terminated the mother's rights based on new facts some six years after two of the children were declared dependent and neglected. When termination is sought on new facts, a new petition should be filed. It was not.

*In Matter of Paul*, 555 P.2d 603 (Okl.1976) approved a trial court's admission of written reports of doctors and police. The decision in *Paul* permits home evaluation and reports of social workers to be admitted in the *dispositional* phase to aid the court in deciding the issue of custody. Such reports are not only useful but necessary for a decision as to placement. But this should not be precedent to allow any and all hearsay evidence, such as introduced in this case, as a basis for termination.

The majority reasons that a termination hearing is not adjudicatory, therefore it must be dispositional. It is in fact a third proceeding and because of its dire consequences must be clad with procedural safeguards. Rules of evidence are followed in an adjudicatory hearing to protect the parents as well as the children, 10 O.S.1971

§ 1111. A trial court should not ignore these rules and thus deny the parents constitutional protections at a termination hearing. Surely they are entitled to confrontation of witnesses.

I am authorized to state that Justice WILLIAMS and Justice SIMMS concur in the views herein expressed.