In the Matter of Julia Kathleen DELANEY, Charles Delaney, Terrie Delaney, Rebecca Delaney, Susan Delaney and Mechell Delaney.

Scharlene GAFFORD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. 52061.

Supreme Court of Oklahoma.

Sept. 30, 1980.

As Corrected Oct. 8, 1980.

---

**23.** 41 Okl. 116, 137 P. 352 (1913).

**24.** 25 Okl. 265, 105 P. 337 (1909).

**25.** Act of Feb. 18, 1901, ch. 379, § 5, 31 Stat. 795.

**26.** 105 P. at 339.

Sullivan, Steely & Ellis by Ellen Colclasure Steely, Duncan, for appellant.

Melvin R. Singleterry, Duncan, Stan McKay, Marietta, for appellee.

OPALA, Justice:

The question to be answered is whether the trial court erred when it refused to vacate as void its prior order by which the children of a legally incompetent mother were found to be "deprived" and her maternal rights came to be terminated. We hold that while the deprived–status adjudication of the order was impervious to the mother's attack on grounds of facial invalidity– launched two and a half years after the order had been made–the maternal rights' termination portion was void on the face of the judgment roll and hence subject to vacation.

A petition to adjudicate the deprived status of six children and to extinguish their mother's rights to them was brought by the District Attorney April 28, 1975. After several continuances, the cause was reached for hearing July 22, following which the court effected an adjudication of both the children's status and of the plea for termination of the maternal bond.

The scanty record before us reflects that at the time critical to this suit, mother–a mentally incompetent individual–had a

guardian of her person and estate (paternal grandmother of children in suit). The guardian also served as a temporary custodian of one of the children. During the initial phase of the case the mother's guardian was represented by legal counsel. He withdrew from the case with leave of court a few days before the fateful July 22nd hearing. Both the mother and her guardian had been served with notice of the proceedings. The children were present in court by their guardian *ad litem* and were represented by court-appointed counsel. Mother did not make an appearance at the hearing, although she was present by her guardian. The hearing culminated in an order by which four of the six children sought to be affected were found to stand in a deprived status and mother's rights to all six of them came to be terminated. The record before us does not reveal why two of the children were omitted from the order here in question.[1] Two and a half years later mother sought to vacate the entire decision. Her motion alleges she had been restored to competency some three months earlier. From the trial court's refusal to vacate the adverse order, mother brings this appeal.

I

DEPRIVED STATUS ADJUDICATION

 A void judgment may be vacated at any time if some fatal defect does appear on the face of the judgment roll. 12 O.S. 1971, § 1038.[2] We find no such infirmity in the order under our scrutiny here with respect to the deprived–status adjudication. Mother's guardian, who had received due notice of the proceedings, was present in person at the hearing and, so far as the record discloses, had full opportunity to offer evidence. While the District Attorney's petition was not verified, it is well settled that want of verification does not constitute a jurisdictional flaw.[3] Although the grandmother was also awarded custody of one of her ward's children,[4] this did not make her *per se* an improper party to protect the interests of her ward. The record does not reflect that grandmother violated her fiduciary duty to the ward while serving as her guardian and as a custodian of her own grandchild. Mother has no constitutionally or legally recognized claim to a guardian *ad litem* when she is in court by and through a general guardian. Nor does want of a guardian *ad litem* constitute a jurisdictional defect.[5]

 In deprived–status proceedings, a parent has no constitutional right to a state–provided lawyer. When assistance of counsel is a constitutional requisite [6]–as it is the case in felony prosecutions–the right to be furnished a lawyer "does not depend on a request." *Carnley v. Cochran*, 369 U.S.

1. Although not reflected in the record, we are informed by uncontradicted statements in the briefs that in separate proceedings, held the same day, the court determined that the two children omitted from the July 22nd order were "in need of supervision".

2. *Scoufos v. Fuller*, Okl., 280 P.2d 720, 723 [1955].

3. Want of verification constitutes a non-jurisdictional defect reachable by motion to strike rather than by plea to the jurisdiction. *Doughty v. Funk*, 24 Okl. 312, 103 P. 634 [1909]; *Green v. James*, 147 Okl. 273, 296 P. 743 [1931]; *Matter of Ernest James C.*, Okl., 578 P.2d 352, 355 [1978]; *Ilee M. v. State Department of Institutions, Social and Rehabilitative Services*, Okl., 577 P.2d 908, 911 [1978].

4. Although this is not shown by the record, the briefs indicate that grandmother had been awarded custody of more than one of her grandchildren.

5. *Stephenson v. Stephenson*, 196 Okl. 623, 167 P.2d 63 [1946]; *Johnston v. Guy*, 165 Okl. 156, 25 P.2d 625 [1933].

6. In a felony case the law makes the demand for a lawyer and, unless there be a valid waiver, the court must appoint one. Juvenile delinquency proceedings fall into the same protected category. *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 [1967]. In deprived–status hearings the law makes no comparable demand. In those proceedings the right to counsel is not constitutional but purely statutory.

We need not decide here whether uncounseled appearance at the parental termination hearing should be likened to uncounseled appearance in a felony case. In Part II of this opinion we

506, 513–516, 82 S.Ct. 884, 889–890, 8 L.Ed.2d 70, 75–79 [1962]. In those situations "[p]resuming waiver from a silent record is impermissible. The record must show ... that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." [7]

■ We are not dealing here with a constitutional right akin to that in criminal prosecutions. Rather, our concern is with the statutory command to provide counsel to a resourceless parent who "desires" or "requests" one.[8] The record indicates the mother's guardian had been served with written notice advising her that a person sued in that proceeding, if unable to hire counsel, could obtain one by appointment of the court. At all proceedings antecedent to the critical hearing of July 22nd, mother's guardian had been represented by what appears to have been a self–procured lawyer who was later granted leave to withdraw. While mother's guardian was unrepresented at the critical July 22nd hearing, we cannot presume from the silent record before us—on the basis of no more than a single uncounseled appearance by mother's guardian—that she had in fact sought from the court, and was denied, the assistance of a state–paid lawyer.[9]

A parent's unexplained uncounseled appearance at a deprived–status hearing in which the totality of the record is consistent with the trial court's obedience to the statutory command that counsel be appointed for a parent who "desires" or "requests" one will not operate to make the judgment roll facially void.[10]

## II

## TERMINATION OF MATERNAL RIGHTS

So far as the order for termination of maternal bond may be affected by the vacation proceeding under review, the dispositive issue is whether the guardian of a mentally incompetent person has the power to "stipulate" the ward into an accelerated adjudication of the parental rights' issue which is to take place concurrently with the determination of the children's status.

■ Parents have a fundamental, constitutionally–protected interest in the continuity of the legal bond with their children. The integrity of familial status is a value to be regarded with great solicitude.[11]

■ Direct notice to a legally incompetent person—without more—makes the process a nullity in the due process sense.[12] While notice to the guardian of a person under disability may provide a court with the power necessary to proceed against the ward, the guardian is not to be permitted to give or barter away any of the safeguards

ground our pronouncement of the termination order's facial invalidity on the guardian's lack of authority to "stipulate" her ward into a consolidated proceeding in which adjudication of the children's status was allowed to be combined with the decision on the issue of the maternal bond's severance.

7. *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 77 [1962].

8. 10 O.S.1971 §§ 24(a) and 1109(b). The former contemplates an appointment for a parent who "desires counsel", while the latter provides that counsel be appointed for a parent who "requests counsel".

9. Another reason which militates against our assumption from the silent record that mother was in fact denied state–provided counsel is that it clearly appears free counsel was furnished for the children.

10. Want of counsel especially when not accompanied by a showing of some jurisdictional infirmity will not render a judgment facially void. *In Matter of F. K. C.*, Okl., 609 P.2d 774 [1980], we distinguished a vacation proceeding from a direct appeal, holding that while absence of counsel might afford a ground for reversal on direct review, it will not necessarily operate as a ground for vacation.

11. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 [1972]; *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 [1972]; *Matter of Chad S.*, Okl., 580 P.2d 983, 985 [1978]; *Matter of F. K. C.*, supra note 10.

12. *Covey v. Town of Somers*, 351 U.S. 141, 146, 76 S.Ct. 724, 727, 100 L.Ed. 1021 [1956].

that stand erected for the protection of the ward. Neither may the guardian in the name of the ward make purely personal decisions.[13] The guardian's duty is to resist the claim against his ward—not to pave the adversary's way to a facile victory.[14]

The guardian's consent to a decision that would combine the children's deprived–status determination with an adjudication of the ward's maternal rights served to relinquish a ward's valuable interest in a legally–protected opportunity for a post–adjudicatory amelioration of those conditions in the child's milieu which were found harmful.[15]

 In a real sense the guardian's consent to an immediate decision upon the issue of maternal bond's severance was a veritable confession of judgment.[16] Obviously the mentally incompetent mother was, at that juncture, without means of ameliorating any deficiency then present in

the children's milieu which formed the basis for declaring them deprived. The guardian's stipulation, which permitted the court to render an accelerated disposition of the parental bond's status, was hence a *true confession* that makes the termination order a manifest nullity on the face of the judgment roll.

In short, the July 22nd adjudication, so far as it affects the *status* of the four children, is in law impervious to the attack launched upon it on grounds of facial invalidity. The order terminating the mother's rights is fatally flawed on the face of the record by the guardian's stipulation that allowed the court forthwith to effect the maternal bond's severance. Cause is remanded with directions to vacate that part of the order here under scrutiny which terminates the mother's rights to the six children.[17]

Affirmed in part and reversed in part.

**13.** *Hendricks v. Grant County Bank,* Okl., 379 P.2d 693, 697 [1963].

**14.** The duty of a guardian to its mentally incompetent ward is no less than that accorded to minors. In the case of *In re Sanders' Estate,* 67 Okl. 3, 168 P. 197 [1917], in the second syllabus, we said that "[i]t is the duty of courts to guard with jealous care the interests of minors in actions involving their rights. No presumption can be permitted against an infant, but, on the contrary, every presumption must be indulged in his favor, and a guardian *ad litem* or other person representing such minor must see to it that every question available is urged on behalf of said minor, and in case of a failure to discharge this duty, it becomes the imperative duty of the court to see that the infant's rights are protected." See also *Bolling v. Campbell,* 36 Okl. 671, 128 P. 1091 [1912]; *Griffin v. Galbraith,* 114 Okl. 208, 247 P. 339, 343 [1926].

**15.** *In Matter of Baby Girl Williams,* Okl., 602 P.2d 1036 [1979]–our most recent expression concerning a mentally incompetent person whose parental rights were sought to be terminated -we held that a person who is confined to a mental hospital and thus unable to assume custody of her child or support it may not be deemed to have "wilfully failed" to provide for the child or to have created a harmful milieu for its upbringing. An order terminating parental rights, when grounded solely on a finding of the parent's mental asylum confinement, fails to set forth any standards of conduct en-

abling the parent later to eschew termination by correcting the harmful condition.

**16.** Confession of judgment by a guardian's stipulation or otherwise is void. It may be collaterally attacked. *Lowery v. Richards,* 120 Okl. 261, 248 P. 622, 625–626 [1926]. In *Title Guaranty & Surety Co. v. Foster,* 84 Okl. 291, 203 P. 231, 241 [1922], we said that a stipulation "founded on a mistaken view of the legal rights of the infant ... is not binding on the court. The guardian cannot irrevocably waive a legal right of his ward. * * * The court is not bound by that stipulation ..." In *Harjo v. Johnston,* 187 Okl. 561, 104 P.2d 985, 991 [1940] we said that a certain action of the guardian was in effect a confession of judgment against the ward in conformity with a compromise and settlement of the litigation, which resulted in a denial of the ward's right to a judicial determination of the issues and constituted a fraud upon the court and the ward. Fraud which prevents a ward's interest from being "fairly presented or fully considered by the court vitiates a judgment and will authorize a court to vacate it."

**17.** Under the statute then in force, 10 O.S. Supp.1975 § 1130(2)(c), the mother was entitled to a six–month period for correction of conditions that resulted in the deprived–status adjudication. That section, amended in 1977, now provides a three–month period.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES and HARGRAVE, JJ., concurring.

SIMMS and DOOLIN, JJ., concurring in part and dissenting in part.