2006 OK CIV APP 34

Roger L. VANDERVORT,
Plaintiff/Appellant,

v.

Patricia R. VANDERVORT,
Defendant/Appellee.

No. 99,595.

Court of Civil Appeals of Oklahoma,
Division No. 2.

Dec. 30, 2005.

Certiorari Denied March 28, 2006.

Jon L. Hester, Hester, Schem, Hester & Batson, Oklahoma City, OK, for Appellant.

Catherine Holland Petersen, Salliann Parker Walker, Virginia Henson, Petersen Associates, Inc., Norman, OK, for Appellee.

Opinion by JOHN F. REIF, Presiding Judge.

¶1 This appeal arises from post-decree proceedings in which Wife, Patricia Vandervort, sought to vacate the parties' divorce decree. The divorce was the result of a petition signed by Husband, Roger Vandervort, an entry of appearance/waiver of summons signed by Wife, and a "consent decree" signed by both parties. Husband, acting pro se, presented these instruments to the District Court of Oklahoma County. Husband and Wife had agreed to divorce and to divest Wife of nearly all her marital property in anticipation of her eventual need for care in a nursing home for multiple sclerosis. Both believed Wife's single status and complete lack of assets would enable her to receive social security disability income and Medicaid to pay for her nursing home care.

¶2 In the time period between the divorce and Wife's need for nursing home care, Husband and Wife were to continue living together at their Texas County residence in Guymon. Husband was to care for Wife until she required nursing home care. Not long after the divorce, however, acrimony developed and Wife ended up living with her parents. Wife claims she went to visit her parents and Husband refused to allow her to return; Husband claims Wife "abandoned" her right to live with him. After considering these facts, along with other evidence and contentions of the parties, the trial court vacated the divorce decree.

¶3 In announcing the ruling from the bench, the trial court vacated the decree on

the ground of fraud, particularly noting that neither party was a resident of Oklahoma County at the time of the divorce. The court further observed, however, that the parties' lack of residency in Oklahoma County was not the only fraud the court considered, but did not elaborate. The court also announced that the divorce case was dismissed, but that the court would reconsider the dismissal if the parties could agree to waive venue. The subsequent journal entry of judgment memorializes the ruling from the bench and includes a dismissal order. It appears that the parties could not agree to waive venue in Texas County in favor of venue in Oklahoma County.

¶ 4 On appeal, Husband basically argues that there was no fraud in procuring the divorce because (1) the parties agreed to the divorce for estate planning purposes, and (2) they *both* waived venue in Oklahoma County by the petition and entry of appearance at the time of divorce. In response, Wife argues that the evidence shows (1) legal fraud on Husband's part in taking advantage of Wife's disabilities due to her multiple sclerosis, and (2) incompetency on Wife's part to agree to the divorce, or to enter an appearance to waive venue. For the reasons that follow, we do not agree with the positions advanced by either Husband or Wife, but nonetheless affirm the vacation of the divorce decree and dismissal of the case.

¶ 5 We find that Wife was competent and that she understood what she was doing. The only thing Wife did not know was that Husband would impose conditions and demands on their post-divorce cohabitation and his continuing care of her. We further find Husband misrepresented that he was a resident of Oklahoma County in the petition. The fact that Wife's entry of appearance agreed for the court to hear and enter the decree of divorce in her absence cannot cure the fraud concerning residency.

¶ 6 The misrepresentation of residence was a fraud on the court because it involves misrepresentation directly affecting the judicial process. *Plotner v. A.T. & T. Corp.*, 224 F.3d 1161 (10th Cir.2000). This misrepresentation was not the only fraud on the court, however. The other, more disturbing fraud on the court involves the parties' collusion to misrepresent the statutory ground of incompatibility, 43 O.S.2001 § 101 (Seventh), to obtain the divorce.

¶ 7 The petition signed by Husband affirmatively represented that incompatibility was the ground upon which divorce should be granted, while the "consent decree" signed by both parties reflected their mutual agreement that incompatibility existed between them. However, at the time the divorce was sought and granted, Husband and Wife intended to return to their Texas County residence where they were to continue living together with Husband providing and caring for Wife. In fact, they did so for a short time after the divorce. These facts belie their claim of incompatibility.

¶ 8 "The statutory ground of incompatibility does not permit the court to dissolve a marriage merely because its termination is desired by one or both parties." *Hughes v. Hughes*, 1961 OK 112, ¶ 12, 363 P.2d 155, 158. "[I]ncompatibility [cannot be] dependent in application upon an agreement or stipulation between the parties, and thus furnish a vehicle for a consensual divorce which the law did not intend." *Id.*

¶ 9 "Actionable incompatibility is determined to exist when there is such a conflict of personalities as to destroy the legitimate ends of matrimony and the possibility of reconciliation." *Williams v. Williams*, 1975 OK 163, ¶ 15, 543 P.2d 1401, 1404 (citing *Kirkland v. Kirkland*, 1971 OK 98, ¶ 0, 488 P.2d 1222 (syllabus 1)). Incompatibility must be established "by proof, objective in its character, of causes to which marital disharmony is attributed [and cannot be] bottomed on a mere subterfuge or afterthought [without] a substantial foundation." *Hughes*, 1961 OK 112, ¶ 8, 363 P.2d at 158 (citations omitted).

¶ 10 The State of Oklahoma has constitutional authority "to declare and maintain a policy in regard to marriage and divorce as to persons domiciled within its borders." *Williams*, 1975 OK 163, ¶ 10, 543 P.2d at 1403. "The statutory grounds of divorce are exclusive, and the courts have

authority in this field to do only that which is prescribed by the legislature." *Id.* at ¶ 11, 543 P.2d at 1403.

¶ 11 "[T]he State is a silent third party in every divorce proceeding." *Id.* The State is an interested party because "the rights of the plaintiff and defendant are not isolated from the general interest of society in preserving the marriage relation as the foundation of the home and the state." *Wooden v. Wooden,* 1925 OK 594, ¶ 15, 239 P. 231, 233. To protect the State's interest, a divorce decree is properly vacated where there is conduct that "amounts to a fraud ... upon the state as represented by the court in the administration of justice." *Id.*

¶ 12 In cases where parties to a divorce collude to procure a judgment and one party later seeks to vacate that judgment, the law generally "will leave them where it finds them." *Erdman v. Erdman,* 1914 OK 308, ¶ 2, 141 P. 965 (citing *Newman v. Newman,* 27 OK 381, ¶ 8, 112 P. 1007, 1010). However, the Oklahoma Supreme Court has also observed that "where the jurisdiction of the court is invoked and obtained by a fraudulent 'concoction' and the fraud is consummated through the instrumentality of a court of justice, it would impeach the moral sense and that of justice that courts be not protected against such fraud." *Meyers v. Meyers,* 1948 OK 246, ¶ 15, 199 P.2d 819, 821 (citing *Miller v. Miller,* 234 Ala. 453, 175 So. 284, 286 (1937)).

¶ 13 We conclude the case at hand falls under the latter rule rather than the former. The parties here colluded to misrepresent incompatibility as a ground for divorce (when they actually intended to continue cohabitating) and, in turn, used the sham divorce to deceive public agencies concerning Wife's eligibility for public benefits. It not only offends public policy for parties to obtain a divorce on a concocted ground, but it also offends public policy to use such a divorce for financial gain. Rather than leave the parties where we find them, we believe equity and justice require they be returned to the state of matrimony. The trial court's judgment accomplishes that purpose.

¶ 14 Husband has also argued on appeal that the trial court erred in awarding Wife attorney fees for prosecuting the motion to vacate and for defending the vacation of the decree on appeal. Considering the fact that Husband controlled nearly all of the marital assets at the time of the attorney fee awards, both equity and necessity dictated that Husband pay Wife's attorney fees incurred in seeking vacation of a patently inequitable decree and in defending the vacation on appeal.

¶ 15 The trial court's judgments vacating the decree of divorce, dismissing the case, and awarding Wife attorney fees are AFFIRMED.

WISEMAN, J., concurs, and GABBARD, J., dissents.

GABBARD, J., dissenting,

¶ 1 This case is a good example of how bad facts sometimes make bad law.

¶ 2 I do not disagree with the majority's analysis of the facts in this case. It finds that Husband and Wife *acted together* to fraudulently obtain a divorce in Oklahoma County knowing that they were not residents of that county and were not incompatible. The parties were dealing with a problem common to many middle-class Americans: How do couples preserve their marital assets in the face of a catastrophic illness? Their solution was to obtain a divorce in which Husband received virtually all the marital property, thereby qualifying Wife for government assistance when her progressive illness caused her health to deteriorate to the point that she needed nursing home care. Husband promised to care for her in the home until that time. Only after Husband allegedly breached his promise of care did Wife move to set aside the decree. That relief should not be granted.

¶ 3 As the majority and the trial court have concluded, this case involves *mutual fraud.* It is not a case in which one spouse practices fraud upon the other in order to obtain an advantageous divorce settlement. Where *both* parties have participated in fraud upon the court, 24 Am.Jur.2d *Divorce*

*and Separation* § 438 (1998) sets forth the general rule:

> [A] spouse who *participates* in the fraudulent procurement of a divorce decree, and who freely enjoys the fruits of the decree, will be unable to have it set aside under a rule allowing actions for relief from judgments procured by fraud. . . .
>
> A court of equity will ordinarily refuse to vacate a decree of divorce where its aid is made necessary by the fault or neglect of the applicant. (Emphasis added)

This rule is based on sound public policy and has been followed by Oklahoma courts since 1910.

¶ 4 In *Newman v. Newman*, 1910 OK 351, 112 P. 1007, the defendant husband obtained a divorce from the plaintiff wife after he convinced her that, if she would agree to the divorce and not claim his property, he would pay her $500 alimony, remarry her within three years, obtain a $5,000 life insurance policy in her favor, and allow her to remain on his land until that time. She agreed, and he obtained the divorce and paid the $500 alimony. Later, the defendant changed his mind and attempted to move the plaintiff off his land contrary to their pre-divorce agreement. As in this case, the plaintiff filed a motion to set aside the divorce on grounds of fraud, based on the defendant's failure to comply with his promise. In refusing to grant the equitable relief requested, the Oklahoma Supreme Court stated:

> There is nothing in the petition which would justify this court in setting aside the decree of divorce on the ground of fraud. The petition so to do discloses the same to have been obtained as a result of collusion between the parties, and this court will leave them where it finds them. The parties thereto are bound by it.

*Id.* at ¶ 8, 112 P. at 1010. *See also Erdman v. Erdman*, 1914 OK 308, 141 P. 965. Similarly, in *Green v. James*, 1931 OK 75, 296 P. 743, the Supreme Court refused to grant equitable relief to either fraudulent party, stating:

> It would be a special novelty for a plaintiff to address the tribunal with 'the defendant and I have been playing a trick on this court, but I discovered he has got the better of me, so please turn the tables on him.'

*Id.* at ¶ 31, 296 P. at 746 (quoting 2 *Bishop on Marriage, Divorce & Separation*, § 1548).

¶ 5 Here, the majority refers to the above-cited cases, but argues that *Meyers v. Meyers*, 1948 OK 246, 199 P.2d 819, justifies setting this decree aside since this fraud so impeaches the moral sense that equity should step in. *Meyers*, however, is not applicable because the party requesting relief in *Meyers* was not involved in the fraudulent act of obtaining the decree and did not know about the divorce until after it was entered. *Meyers* is a case in which one party committed fraud upon another to obtain an advantageous divorce settlement. Such is not the case here.

¶ 6 Here, Wife was not incompetent at the time of the decree, nor did Husband fraudulently promise to care for her in order to obtain an advantageous divorce decree. On the contrary, the evidence clearly establishes that Wife wanted this divorce, participated in obtaining it, and did not seek relief from it until she suffered from an unanticipated event—Husband's alleged refusal to care for her. This alleged conduct occurred *after the decree was entered.*

¶ 7 Title 43 O.S.2001 §§ 204 and 205 permit married parties to enter into agreements settling property and support issues in anticipation of divorce. Such agreements may be enforceable in a separate action, even when they are not reviewed by the court and merged into the divorce decree itself. *Stockton v. Stockton*, 1956 OK 226, 299 P.2d 146; *Elliott v. Dunham*, 1942 OK 237, 130 P.2d 534; *Eatman v. Eatman*, 1975 OK CIV APP 68, 549 P.2d 389. In such an action, Wife potentially could recover the cost of the interim care which Husband agreed to provide. Here, however, if the divorce decree is vacated, Wife may recover far more than originally agreed.

¶ 8 Because the majority's decision is contrary to established precedent and public policy, and provides an unnecessary and inappropriate remedy, I dissent.